## 57187. CITY COUNCIL OF AUGUSTA v. NEVILS.

BANKE, Presiding Judge.

The claimant in this workers' compensation case, an employee of the Augusta Fire Department, aggravated a previous, work-related knee injury while playing on the "Augusta Fire Department softball team." He had received a lump sum workers' compensation award for the previous injury on the basis of a 10 percent disability to the leg. He filed a new claim for compensation, giving the date of the original injury as the date of injury, and was awarded additional compensation based on an additional 15 percent disability to the leg.

The administrative law judge ruled that the claimant's participation on the softball team was work-connected based on a finding that "the executives of the fire department liked to see firemen take part in recreation of that kind, that it was good for them, and the better physical fitness a fireman was in the better job he could do for the fire department." The evidence also showed, however, that the team was funded independently of the fire department and that, while the firemen were on duty 24 hours a day in the sense that they were always on call, the claimant's participation on the team was during non-working hours and at an off-premises location.

The administrative law judge's award was adopted by the full board with one dissent, and the board's award was in turn affirmed by the superior court. This appeal followed. *Held:*

There are no Georgia authorities which directly treat the issue of whether an employee's injury suffered while participating on a company-related athletic team is work-connected so as to be compensable. However, 1A Larson, The Law of Workmen's Compensation, 5-101, 5-106, § 22.24 (1979 Rev.) lists four variables which are useful in making the determination: (1) Did the accident occur on or off the employer's premises and was it suffered in or out of working hours, (2) to what extent was the team organized on the employer's initiative, (3) what, if any, is the amount of the employer's contribution, in money or equipment, to the team, and (4) did the employer derive

any benefit from the employee's participation on the team?

In the present case it is clear that the city made no financial contribution to the team and that the team played off-premises during non-working hours. Thus, we are concerned only with the second and fourth variables.

There is no clear indication in the transcript as to whether the team was organized by the department executives or by the employees themselves. It is clear, however, that although the department encouraged participation, such participation was purely voluntary. The chief testified: "We've always talked it up because the more exercise and better physical fitness that you can be in, the better job we feel like you can do."

Being an arm of the city, the department could not, of course, have achieved any economic or business benefit from the team, such as advertising or good will. The only possible benefit was that mentioned by the chief, i.e., increased worker productivity through physical fitness. "Basically, the trouble with this argument [increased worker efficiency and morale] is not that such benefits do not result, but that they result from every game the employee plays whether connected with his work or not. In this respect, the argument [is] reminiscent of the same view sometimes heard in connection with personal comfort cases: eating, resting, and the like do indeed improve the efficiency of the employee, but this is equally true (and even more true) of the sleeping and eating which he does at home. And so, just as in the sleeping and eating cases some arbitrary time and space limitations must circumscribe the area within which the 'benefit' establishes work-connection, the recreation cases must submit to some similar limitation, since otherwise there is no stopping point which can be defined short of complete coverage of all the employee's refreshing social and recreational activities. It can be taken as the majority view that these moral and efficiency benefits are not alone enough to bring recreation within the course of employment." 1A Larson, supra, 5-113, 5-116, § 22.30.

The claimant cites City of Oklahoma City v. Alvarado, 507 P2d 535 (1973) in support of the board's award. However, that case involved an injury to a fireman

who was playing volleyball *during his work shift and while on the station's premises.* This is a crucial distinction. A much closer case is Wilson v. General Motors Corp., 298 N. Y. 468 (84 NE2d 781) (1949) wherein compensation was denied to an employee participating on an employee team, even though the team received financial support from the employer and was allowed to hold organizational meetings on company time. Cf. *Teems v. Aetna Cas. &c. Co.,* 131 Ga. App. 685 (206 SE2d 721) (1974).

In accordance with the above authorities, we find that the claimant was not entitled to compensation for the aggravation of his knee injury at the softball game. However, the claimant also argued that he was entitled to compensation due to a change in condition. See Code Ann. § 114-709; *Morrison Assur. Co. v. Hodges,* 130 Ga. App. 436 (203 SE2d 629) (1973). The board did not rule on this issue, and we accordingly remand the case for a determination of whether the claimant was entitled to compensation under this theory of recovery.

*Judgment reversed and remanded. Underwood and Carley, JJ., concur.*

SUBMITTED FEBRUARY 5, 1979 — DECIDED APRIL 24, 1979.

*Stephen E. Shepard, Samuel F. Maguire,* for appellant.
*George A. Markert, Huggins & Allen, C. Thomas Huggins,* for appellee.
*Walter E. Sumner,* amicus curiae.