BOOTH, Judge.
This cause is before us on appeal from a final order awarding compensation benefits for injuries sustained by claimant while playing on a softball team sponsored by the employer, Copytronics. The sole issue presented is whether the injury arose out of and in the course of claimant’s employment. Section 440.02(16); Fla.Stat. (1989).
The evidence showed that the employer had periodically sponsored a team composed primarily of employees, with some spouses of employees and other nonem-ployees. None of the games or practice sessions were held during work hours or on the employer’s property. On January 2, 1990, claimant began work as a salesperson for Copytronics and shortly thereafter, was asked to play on the company-sponsored softball team. On January 29, 1990, claimant was injured while playing in a softball game. He filed a claim for workers’ compensation benefits that the employer controverted.
At the hearing, claimant testified that the employer did not encourage him to play softball, and he was not required to be on the team. He testified he would often discuss business at local restaurants and bars after the games and that he received one lead as a result of playing softball.
Catherine Bates, a former employee, testified that conversations at the games were mostly company gossip concerning “closing deals” and winning contests. Ms. Bates further testified that “thousands” of leads were obtained at the games and that the company “benefited” in a number of ways, such as by employees at games “talking and thinking” about work. The order on review simply states that the judge of compensation claims “[accepted] the testimony of the Employee/Claimants [sic] witnesses [sic] wherein she testified that the Employer benefitted [sic] from the Employee’s participation in the company sponsored softball game.”
This court has previously adopted Professor Larson’s[1] three-part test for compensability of injuries occurring during recreational or social activities. This test requires that:
(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.
Claimant relies on the third alternative of Larson’s test, but our review of the record fails to reveal a “substantial direct benefit” to the employer from claimant’s participation in the games. In Brockman v. City of Dania, 428 So.2d 745, 746 (Fla. 1st DCA 1983), this court held that:
[The claimant] has failed to demonstrate that the [employer] derived “substantial direct benefit” from the game beyond the intangible benefit of improvement of employee morale common to any kind of recreational activity.
A “substantial direct benefit” to the employer contemplates more than the intangible, undefined benefits referred to here and in the Brockman case. Advertising, publicity, and financial benefits are examples of those types of benefits that can be shown and found to be sufficient.
Illustrative of the kind of findings necessary to show a substantial direct benefit are those recited in Bari Italian Food v. Rittger, 527 So.2d 255, 256 (Fla. 1st DCA 1988), which held that:
*25 The deputy commissioner made extensive findings that the company received advertising and publicity benefits from the team’s efforts. He found that the uniforms displayed the company name; team members, other employees of the company, wives and girlfriends went to various pizza parlors that were clients of the company after the games; sales representatives from the company who handled the pizza parlors’ account also attended those postgame activities; the wives and girlfriends wore T-shirts, identifying the company and matching the company’s jerseys worn by the players, to the games and to the postgame activities. Placing great significance on the fact that the company is a small family owned corporation which benefited perhaps to a greater extent than a large corporation from such a team endeavor, and due also to the fact that the team patronized company customers as a group following the games, the DC concluded that the company benefited from the teams’ efforts to the extent that this injury should be deemed compensable.
Accordingly, the order below is reversed and the cause remanded with directions that the claim be dismissed.
BARFIELD and MINER, JJ., concur.

. 1A A. Larson, Workmen's Compensation Law § 22.00 (1990); Brockman v. City of Dania, 428 So.2d 745 (Fla. 1st DCA 1983).