# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MORRIS JAMES LLP,

    Employer-Appellant,

    v.

WILLIAM WELLER,

    Claimant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

C.A. No. N16A-05-006 FWW

Submitted: January 6, 2017
Decided: March 16, 2017

## MEMORANDUM OPINION

On Appeal from the Industrial Accident Board:
**REVERSED and REMANDED.**

Scott R. Mondell, Esquire, Elissa A. Greenberg, Esquire, Elzufon Austin Tarlov & Mondell, PA, 300 Delaware Avenue, Suite 1700, Wilmington, Delaware 19801; Attorneys for Appellant Morris James LLP.

Gary S. Nitsche, Esquire, William R. Stewart, Esquire, Weik, Nitsche & Dougherty, 305 North Union Street, Second Floor, P.O. Box 2324, Wilmington, Delaware 19899; Attorneys for Appellee William Weller.

**WHARTON, J.**

## I.    INTRODUCTION

Morris James LLP ("Appellant") filed a Notice of Appeal on May 12, 2016, requesting a review of the April 18, 2016 decision by the Industrial Accident Board ("Board").  Appellant contends that the Board erred when it found that William Weller's ("Weller") injury, which was sustained while playing on an employee softball team, occurred within the course and scope of his employment.

In considering this appeal, the Court must determine whether the Board's decision is supported by substantial evidence and is free from legal error.  Upon consideration of the pleadings before the Court and the record below, the Court finds that the Board legally erred by applying the incorrect standard for determining whether a recreational event, which is not company sponsored, is within the course and scope of one's employment.  Accordingly, the Board's decision is **REVERSED** and **REMANDED**.

## II.    FACTUAL AND PROCEDURAL CONTEXT

Appellant is a law firm based in Wilmington, Delaware.  In the 1970s, a group of Appellant's employees and young associates decided to form a softball team.[1]  Appellant supports its employees' softball team by paying for their jerseys,

---

[1] *Weller v. Morris James, LLP*, No. 1429339, at 51:11-16 (Del. I.A.B. Dec. 16, 2015) (TRANSCRIPT).

their bats, and their meals after each game.[2] Appellant also supports the team by signing liability agreements so that the players can practice on softball fields in the area.[3] With Appellant's support, the team continues to compete against other local practitioners in the Wilmington Lawyers' Softball League each season.[4]

In October of 2002, Weller began working as a bankruptcy paralegal for Appellant.[5] Shortly after Weller began working there, a partner asked Weller to manage the softball team.[6] Weller agreed to do so.[7] As manager of the softball team, Weller worked on softball-related activities while he was at work.[8] However, Weller's contribution to the softball team never factored into his annual performance evaluations.[9] Weller continued in this role until Sherry Perna ("Perna"), who is the controller of Appellant, assumed the managerial duties of the team in 2013.[10]

---

[2] *Id.* at 18:7-21; 22–23. Appellant pays all of the expenses associated with the softball team each year, which totals approximately $5,000. *Id.* at 89:10-13.

[3] *Id.* at 21–22. If the team wants to practice, the owner of the softball field requires someone to sign an agreement shielding the owner from liability in the event of an injury. *Id.* Without Appellant signing such an agreement, players admit that they would be unable to practice. *Id.* at 71:16-25. It is worth noting, though, that the commissioner of the Wilmington Lawyers' Softball League signs the liability agreements of behalf of the teams for games. *Id.* at 82:22-25.

[4] *Id.* at 41:24-25; 42:1.

[5] *Id.* at 15:9-14.

[6] *Id.* at 16:1-5.

[7] *Id.*

[8] *Id.* at 16.

[9] *Id.* at 77:15-23.

[10] *Id.* at 16:8-9.

On June 10, 2015, Perna asked Weller to get the cooler and buy beverages for the game that evening.[11] Weller therefore decided to leave work approximately thirty minutes early, as he has done numerous times before.[12] Appellant permits Weller to leave work early for softball games and other personal reasons so long as he asks for permission.[13]

During the game that evening, Weller was running around the bases when his Achilles tendon ruptured.[14] After the injury occurred, Perna suggested to Weller that he try running his claim through Appellant's workers' compensation carrier.[15] Perna testified, however, that she offered this suggestion only as Weller's friend.[16] Moreover, Perna testified that she based this suggestion on the fact that Appellant's old workers' compensation carrier covered another employee's claim involving softball-related injuries.[17]

Appellant's new carrier denied Weller's claim.[18] After reviewing the circumstances surrounding Weller's injury, it determined that Weller's injury did not occur within the course and scope of his employment for Appellant.[19] Nonetheless, Weller's medical bills from his surgery to repair his Achilles tendon

[11] *Id.* at 19:14-25.
[12] *Id.* at 20:3-8.
[13] *Id.* at 35:15-20.
[14] *Id.* at 28:14-15.
[15] *Id.* at 94:24-25; 95:1-4.
[16] *Id.* at 96:7-10.
[17] *Id.* at 95:2-4.
[18] *Id.* at 30:13-23.
[19] *Id.* at 41:1-23; 42:1-6.

were covered under Appellant's insurance policy.[20] Weller was out of work from June 11, 2015 to September 8, 2015 recovering from this surgery.[21]

Weller petitioned the Board to determine whether he was entitled to compensation from Appellant's workers' compensation carrier, and the Board held a hearing regarding this matter on December 16, 2015. The sole issue presented to the Board at this hearing was whether Weller's injury occurred within the course and scope of his employment for Appellant. All of the aforementioned facts were established at the hearing.[22]

For purposes relevant to this appeal, several employees of Appellant also gave testimony about the potential benefits Appellant receives from its employees playing on the softball team. In particular, when asked whether Appellant obtained an "economic benefit" from its employees playing on the softball team, Weller testified that playing softball is "a great team building exercise for the firm" because employees learn to communicate better with one another.[23] Weller also testified that he believes employee participation on the softball team enhances morale and camaraderie within the firm.[24]

---

[20] *Id.* at 47:13-15.
[21] *Id.* at 121:16-17.
[22] The Board made these factual findings in its determination as well. *See Weller v. Morris James, LLP*, No. 1429339, at 2–10 (Del. I.A.B. Apr. 18, 2016).
[23] *Weller v. Morris James, LLP*, No. 1429339, at 33:11-15 (Del. I.A.B. Dec. 16, 2015) (TRANSCRIPT).
[24] *Id.* at 50:4-18.

Additionally, Thomas Herweg ("Herweg"), who is the executive director of Appellant, testified that he enjoys playing softball because he "think[s] it helps for morale and camaraderie."[25] Herweg believes that enhancing employees' morale by playing softball inevitably enhances their productivity at work.[26] Herweg also testified that Appellant does not use the softball team as a mechanism for soliciting business, nor does Appellant "derive any direct business benefit by putting [Appellent's] name on the uniforms."[27]

Finally, Perna agreed that playing on the softball team is "morale boosting" because employees are able to "make relationships out of it."[28] However, when asked if playing on the softball team enhances productivity at work, Perna testified that she does not "know about productivity, but our relationships are better."[29]

On April 18, 2016, the Board determined that Weller's injury occurred within the course and scope of his employment for Appellant.[30] In reaching this conclusion, the Board relied on the four-factor standard from *Larson's Workers' Compensation Law* ("*Larson's*"),[31] which has been adopted by Delaware courts. The Board weighed these four factors and determined that Appellant "probably

---

[25] *Id.* at 64:9-10.
[26] *Id.* at 78:1-9.
[27] *Id.* at 72–73.
[28] *Id.* at 89:22-24.
[29] *Id.* at 110:5-12.
[30] *See Weller v. Morris James, LLP*, No. 1429339, at 13 (Del. I.A.B. Apr. 18, 2016).
[31] *Id.* at 11–13; 2 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law*, § 22.04[4][b]-[e] (LEXIS Publishing 2001).

obtains a benefit through increased productivity of the players by having the firm team in the softball league."[32] Moreover, the Board determined that Appellant's "willingness to accept liability for on field incidents" by signing hold harmless agreements evidences a "modicum of initiative or control" sufficient to bring the softball games within the course and scope of Weller's employment.[33] Finally, the Board noted that, while the games took place off of work premises and after work hours, Weller "was allowed to leave work early to purchase beverages for the game when he was the manager of the team."[34]

## III.  THE PARTIES' CONTENTIONS

On appeal, Appellant argues that the Board's decision should be reversed for three reasons.  First, Appellant argues that the Board erred by holding that a presumed increase in employee productivity from recreational activities provides a direct business benefit to Appellant.[35]  Appellant contends that the Board arrived at this erroneous conclusion by applying the incorrect legal standard.[36]  According to Appellant, the correct standard to be used under these circumstances explicitly disregards intangible benefits that are obtained from an employee's recreational activities, such as a boost in employee morale and efficiency.[37]  Given that the

---

[32] *Weller v. Morris James, LLP*, No. 1429339, at 13 (Del. I.A.B. Apr. 18, 2016).
[33] *Id.* at 12–13.
[34] *Id.* at 12.
[35] Appellant's Opening Br., D.I. 10, at 21–24.
[36] *Id.* at 13–14.
[37] *Id.* at 22–23.

7

Board applied the incorrect legal standard and improperly considered intangible benefits in its analysis, Appellant contends that the Board's decision should be reversed.[38]

Second, Appellant argues that the Board erred by finding that Appellant exercised a sufficient degree of control over the softball games to bring them within the course and scope of employment.[39] In its decision, the Board found that Appellant's willingness to sign hold harmless liability agreements on behalf of its employees "evidences a modicum of initiative or control at least with respect to team practices."[40] Appellant contends that a "modicum" of control, coupled with the erroneous standard applied by the Board, is insufficient to bring the softball games within the course and scope of employment.[41]

Third, the Board's analysis noted that Appellant was permitted to leave work early before games, but it is unclear whether the Board used this finding in its overall determination.[42] Assuming *arguendo* that the Board did consider it, Appellant argues that the Board erred in doing so because Appellant afforded Weller the exact same courtesy regardless of his after-hours obligations.[43] Furthermore, Appellant contends that, as a practical matter, an employer's

---

[38] *Id.*
[39] *Id.* 17–18.
[40] *Weller v. Morris James, LLP*, No. 1429339, at 12–13 (Del. I.A.B. Apr. 18, 2016).
[41] D.I. 10, at 18–21.
[42] *Id.* at 25.
[43] *Id.* at 27.

8

willingness to grant requests for early leave should not bring employees' after-hour plans within the ambit of employment.[44] Appellant asserts that doing so would create a dangerous precedent because any after-hours activity might be brought within the scope of employment as long as the employee first secured permission to leave work.[45]

In response, Weller concedes that the Board used the wrong standard in determining whether playing softball was within the course and scope of his employment for Appellant.[46] However, Weller contends that this error is harmless.[47] Specifically, Weller argues that the Board's use of the wrong standard is harmless because both standards have an identical factor, which is whether the recreational event provided a direct and tangible benefit to the employer.[48] According to Weller, the Board had substantial evidence to find that an increase in employee productivity from playing softball provides a direct and tangible benefit to Appellant.[49] In addition, Weller asserts that the Board's other findings are supported by substantial evidence and are free from legal error.[50] Therefore, Weller argues that the Board's decision should be affirmed.

---

[44] *Id.*
[45] *Id.*
[46] Appellee's Answering Br., D.I. 12, at 26–28.
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.* at 14–25.

## IV. STANDARD OF REVIEW

The Board's decision must be affirmed so long as it is supported by substantial evidence and is free from legal error.[51] Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.[52] While a preponderance of evidence is not necessary, substantial evidence means "more than a mere scintilla."[53] Questions of law are reviewed *de novo*,[54] but because the Court does not weigh evidence, determine questions of credibility, or make its own factual findings,[55] it must uphold the decision of the Board unless the Court finds that the Board's decision "exceeds the bounds of reason given the circumstances."[56]

## V. DISCUSSION

In Delaware, an employee is entitled to receive benefits pursuant to the workers' compensation statute for injuries or death "arising out of and in the course of employment,"[57] but only:

---

[51] *Conagra/Pilgrim's Pride, Inc. v. Green*, 2008 WL 2429113, at *2 (Del. June 17, 2008).

[52] *Kelley v. Perdue Farms*, 123 A.3d 150, 153 (Del. Super. 2015) (citing *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

[53] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

[54] *Kelley*, 123 A.3d at 152–53 (citing *Vincent v. E. Shore Markets*, 970 A.2d 160, 163 (Del. 2009)).

[55] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66–67 (Del. 1965)).

[56] *Bromwell v. Chrysler LLC*, 2010 WL 4513086, at *3 (Del. Super. Oct. 28, 2010) (quoting *Bolden v. Kraft Foods*, 2005 WL 3526324, at *3 (Del. Dec. 21, 2005)).

[57] 19 *Del. C.* § 2304 ("Except as expressly excluded in this chapter and except as to uninsured motorist benefits, underinsured motorist benefits, and personal injury protection benefits, every employer and employee, adult and minor, shall be bound by this chapter respectively to pay and

while the employee is engaged in, on or about the premises where the employee's services are being performed, which are occupied by, or under the control of, the employer (the employee's presence being required by the nature of the employee's employment), or while the employee is engaged elsewhere in or about the employer's business where the employee's services require the employee's presence as a part of such service at the time of the injury . . . .[58]

Delaware courts have found that "arising out of" and "in the course of" are two distinct elements that must be separately established,[59] and determining whether these elements are met entails a "highly factual" analysis.[60] Whereas the phrase "arising out of" refers to the origin of the accident and its cause,[61] the phrase "in the course of" refers to the time, place, and circumstances of the injury.[62]

---

to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies."). *See also Histed v. E.I. Du Pont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993) ("Under the Act every employee is bound to accept compensation for personal injury caused by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.").

[58] 19 *Del. C.* § 2301(19)(a).

[59] *See, e.g., Storm v. Karl–Mil, Inc.*, 460 A.2d 519, 521 (Del. 1983) (citing *Children's Bureau of Delaware v. Nissen*, 29 A.2d 603, 607 (Del. Super. 1942)); *Stevens v. State*, 802 A.2d 939, 945 (Del. Super. 2002) (citing *Dravo Corp. v. Strosnider*, 45 A.2d 542, 543 (Del. Super. 1945)); *Rose v. Cadillac Fairview Shopping Ctr. Props. (Delaware) Inc.*, 668 A.2d 782, 786 (Del. Super. 1995) (citing *Dravo Corp.*, 45 A.2d at 543)).

[60] *Histed*, 621 A.2d at 345.

[61] *See Spellman v. Christiana Care Health Servs.*, 74 A.3d 619, 623 (Del. 2013) (citing *Tickles v. PNC Bank*, 703 A.2d 633, 637 (Del. 1997)). *See also Delhaize America, Inc. v. Barkas*, 2007 WL 2429375, at *3 (Del. Super. Aug. 22, 2007) ("Most authorities hold that an injury arises out of an employee's employment if it 'arises out of the nature, conditions, obligations or incidents of the employment, or has a reasonable relation to it.' This does not mean that the injury has to arise out of the employee's main work. It is sufficient if the injury arises from a 'situation which is an incident or has a reasonable relation to the employment, and that there be some causal connection between the injury and the employment.' However, there does not have to be an 'essential causal relationship' between the employment and the injury. Therefore, an employee does not have to be injured during a job-related activity to be eligible for workers' compensation

11

At issue on appeal is whether Weller's injury from a softball game occurred within the course and scope of his employment for Appellant.[63] Courts in this jurisdiction have already ascertained the standard to be used under the factual circumstances present here. In *Nocks v. Townsend's Inc.*,[64] for instance, an employee injured his knee during a softball game that was sponsored by his employer.[65] To determine whether a *company-sponsored* recreational event occurred within the course and scope of one's employment, the Court adopted the four-factor standard set forth in *Larson's*.[66] This standard requires the Court to consider (1) the time and place factor; (2) the degree of employer initiative; (3) financial support and equipment furnished by employer; and (4) employer benefit from the company team.[67] Weighing these factors, the Court found that the

---

benefits." (citations omitted)); *Hettinger v. Bd. of Trs. of Delaware Technical and Cmty. Coll.*, 2006 WL 2905156, at *2 (Del. Super. Sept. 27, 2006) ("An essential causal connection between the injury and the employment is not required. . . .'[A]n injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment, or has a reasonable relationship to it.'" (citations omitted)).

[62] *See Spellman*, 74 A.3d at 623 (citing *Tickles*, 703 A.2d, at 637). *See Dravo Corp.*, 45 A.2d at 543–44 ("It covers those things that an employee may reasonably do or be expected to do within a time during which he is employed, and at a place where he may reasonably be during that time.").

[63] Delaware courts, as well as the Board, have used the terms "scope" and "arising out of" interchangeably. To prevent any confusion, the Court will use the term "scope" throughout this decision.

[64] *See* 1999 WL 743658 (Del. Super. Aug. 25, 1999).

[65] *Id.* at *1.

[66] *See id.* at *3; *Larson's* at § 22.04[4][b]-[e].

[67] *Nocks*, 1999 WL 743658, at *3; *Larson's* at § 22.04[4][b]-[e].

12

Board's decision, holding that the softball game did not occur within the course and scope of employment, was supported by substantial evidence.[68]

Additionally, in *State v. Dalton*,[69] a Delaware state trooper was injured during a charity softball game that was sponsored by the Town of Middletown.[70] Because the event was *not* company sponsored, the Court adopted a different standard from *Larson's* to address the same legal issue.[71] Under this standard, the Court is required to consider whether:

> (1) it occurs on the premises during a lunch or recreation period as a regular incident of the employment; (2) the employer, by expressly or impliedly requiring participation, or by making the activity part of the services of the employee, brings the activity within the orbit of the employment; or (3) the employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.[72]

---

[68] *Nocks*, 1999 WL 743658, at *7. The Board, with which the Court agreed, made the following findings in reaching its decision: First, the game occurred after work hours and off of the employer's premises. *Id.* at *4. Second, the league was organized by the employees of the employer, and the fact that the employer allowed its employees to conduct league affairs during work hours was nothing more than passive encouragement of the endeavor. *Id.* Third, merely providing financial support is not enough in itself to bring a company team within the course and scope of one's employment. *Id.* at *5. While the employer purchased all of the equipment, including jerseys, balls, bases, and trophies, expenditures did not exceed $1,000.00. *Id.* Fourth, the employer did not derive any financial benefit from the league because it neither collected any admission nor charged membership dues. *Id.* at *5. Also, the employer derived no benefit from the presence of its name on the players' jerseys because customers did not attend the games. *Id.*

[69] 2005 WL 148770 (Del. Super. Jan. 20, 2005), *aff'd*, 878 A.2d 451 (Del. 2005).

[70] *Id.* at *1.

[71] *Id.* at *2; *Larson's* at § 22.01.

[72] *Larson's* at § 22.01.

13

Ultimately, the Court affirmed the Board's decision, finding that the charity softball game occurred within the course and scope of the trooper's employment.[73] The Delaware Supreme Court thereafter affirmed this Court's decision and held that it "correctly decided to apply the non-sponsored recreational activity factors set forth in *Larson's* because the softball game was not sponsored by the State Police."[74] The Delaware Supreme Court also held that "the factors set forth in *Larson's* treatise for determining the compensability of a non-sponsored recreational activity are stated in the disjunctive," and therefore, "only one of the factors must be satisfied to support a finding that an injury is compensable."[75]

In this case, the Board determined that the Wilmington Lawyers' Softball League, not Appellant, sponsored the softball games. The Board therefore framed the issue before it as whether Weller's injury "while participating in a *non-sponsored* recreational event was in the course and scope of employment."[76] The Board then correctly identified *Dalton* as the applicable precedent to follow, but it proceeded to outline and apply the factors set forth in *Nocks*.[77] The Board's

---

[73] *Dalton*, 2005 WL 148770, at *2. The Court noted that the trooper "easily satisfies two of the three Larson factors" because "charity work is part of the job of a state trooper." *Id.* at *2. Also, superior officers at the Delaware State Police solicited troopers to "volunteer" for charity events and offered credits for advancement in rank if troopers agreed to do so. *Id.*

[74] *Dalton*, 878 A.2d at 455.

[75] *Id.* at 456.

[76] *Weller v. Morris James, LLP*, No. 1429339, at 11 (Del. I.A.B. Apr. 18, 2016) (emphasis added).

[77] *Id.* at 11–13.

14

application of the *Nocks* factors constitutes legal error. Accordingly, the Court remands this case to the Board for it to apply the *Dalton* factors.

Weller concedes that the Board applied the incorrect legal standard. Weller argues, however, that the Board's failure to apply the correct legal standard is harmless because both standards contain an identical factor, which is whether the recreational event provided a direct benefit to the employer.[78] As the Delaware Supreme Court held in *Dalton*, a claimant is only required to prove that one of the three factors exists. Because the Board had substantial evidence to find that an increase in employee productivity from playing softball provides a direct benefit to Appellant, Weller argues that the result is the same under an analysis of the *Dalton* factors.[79]

The Court defers ruling on whether both standards contain an "identical factor" at this juncture. The Board found Herweg's testimony that "the firm probably obtains a benefit through increased productivity of the players by having a firm team in the softball league" sufficient, "along with the Employer imitative [sic] shown by the willingness to accept liability for on field incidents," to bring Weller's accident within the course and scope of his employment.[80] Thus, it is unclear to the Court whether the Board would have found that its determination

---

[78] Appellee's Answering Br., D.I. 12, at 26–28.
[79] *Id.*
[80] *Weller v. Morris James, LLP*, No. 1429339, at 13 (Del. I.A.B. Apr. 18, 2016).

15

that the firm "probably" benefited by increased productivity of the softball players, standing alone, would have met *Dalton*'s substantial benefit test.

It is worth noting, however, that the third factor set forth in *Dalton* requires the employer to derive a "substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life."[81]  *Larson's* suggests that a "direct benefit" to an employer in a social context generally includes "the benefit a business gains from having its employees entertain clients, the participation of employees in business-related clubs and organizations or social activities . . . ."[82]  In the context of a recreational event, such as a softball game, a "direct benefit" to an employer includes business advertising, publicity, and monetary gain.[83]

Out of necessity, intangible benefits are excluded from consideration under this factor in order to prevent every recreational event from being brought within the course and scope of employment.  As *Larson's* points out:

> Controversy is encountered . . . when the benefit asserted is the intangible value of increased worker efficiency and morale. Basically, the trouble with this argument is not that such benefits do not result, but that they result from every game the employee plays whether connected with his work or not.[84]

---

[81] *Dalton*, 2005 WL 148770, at *2; *Larson's* at § 22.01.

[82] *See Ostrowski v. Wasa Elec. Servs., Inc.*, 960 P.2d 162, 171 (Haw. Ct. App. 1988); *Larson's* at § 22.05[1].

[83] *See Ostrowski*, 960 P.2d 162, 171–72; *Larson's* at § 22.05[2].

[84] *Larson's* at § 22.05[3].  *See also id.* ("In this respect, the argument is reminiscent of the same view sometimes heard in connection with the personal comfort cases: eating, resting, and the like do indeed improve the efficiency of the employee, but this is equally true [and even more true] of

16

Therefore, a majority of courts have held that intangible benefits alone are not enough to bring a recreational event within the course and scope of one's employment,[85] "since otherwise there is no stopping point which can be defined short of complete coverage of all the employee's refreshing social and recreational activities."[86] On remand, the Board shall take these considerations into account when it applies the *Dalton* factors.

## VI. CONCLUSION

For the foregoing reasons, the Board's decision is hereby **REVERSED** and the matter **REMANDED** to the Board for it to apply the correct legal standard to its factual findings.

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.

---

the sleeping and eating which he does at home. And so, just as in the sleeping and eating cases some arbitrary time and space limitations must circumscribe the area within which the 'benefit' establishes work-connection . . . .").

[85] *See, e.g., Copytronics v. Lemon*, 588 So.2d 23, 24–25 (Fla. Dist. Ct. App. 1991); *City Council of Augusta v. Nevils*, 255 S.E.2d 140, 141 (Ga. Ct. App. 1979); *Moi v. State, Dep't of Pub. Safety*, 188 P.3d 753, 760–61 (Haw. Ct. App. 2008); *Ostrowski*, 960 P.2d at 171–72; *Gazette Commc'ns, Inc. v. Powell*, 2010 WL 3894609, at *1–*3 (Iowa Ct. App. Oct. 6, 2010); *Smart v. Georgetown Cmty. Hosp.*, 170 S.W.3d 370, 372–73 (Ky. 2005); *Jacobitz v. Aurora Cooperative*, 865 N.W.2d 353, 357–58 (Neb. 2015); *Gray v. State*, 290 N.W.2d 651, 654–55 (Neb. 1980); *Nevada Indus. Comm'n v. Holt*, 434 P.2d 423, 424–25 (Nev. 1967); *Anheuser-Busch Co., Inc. v. Pelletier*, 641 A.2d 1018, 1021 (N.H. 1994); *Licht v. Vill. of Hastings-On-Hudson*, 78 A.D.2d 732, 733 (N.Y. App. Div. 1980); *Burnett v. INA*, 810 S.W.2d 833, 837–38 (Tex. App. 1991). *See also Larson's* § 22.05[3] ("It can be taken as the majority view that these morale and efficiency benefits are not alone enough to bring recreation within the course of employment.").

[86] *Larson's* at § 22.05[3].