**Lisa KELLEY, Claimant
Below–Appellant,**

v.

**PERDUE FARMS, Employer
Below–Appellee.**

**C.A. No. K15A–02–001 WLW**

Superior Court of Delaware,
IN AND FOR KENT COUNTY.

Submitted: July 1, 2015
Decided: October 8, 2015

Craig T. Eliassen, Esquire of Schmittinger & Rodriguez, P.A., Dover, Delaware; attorney for the Appellant.

Anthony M. Frabizzio, Esquire and John J. Ellis, Esquire of Heckler & Frabizzio, Wilmington, Delaware; attorney for the Appellee.

## OPINION

WITHAM, R.J.

Before the Court is Appellant/Claimant Lisa Kelley's ("Kelley") appeal from a decision of the Industrial Accident Board ("IAB" or "Board") granting Appellee/employer Perdue Farm's ("Perdue") request for an offset representing fifty percent of short term disability payments made to the Claimant. The issue before the Court is whether an employer is entitled to an offset of workers' compensation benefits when an employee has received benefits from a short term disability policy for which the employer and the employee have each paid fifty percent of the policy premium. For the reasons set forth below, the decision of the Board is affirmed.

## BACKGROUND

Perdue acknowledged that Kelley suffered from right wrist tendonitis caused by repetitive work duties. The injury manifested on April 30, 2014. Kelley earned $422.29 per week prior to the injury, which is equal to a compensable rate of $281.54 per week. The total disability period encompassed ninety days from May 6, 2014 through August 3, 2014. At the time of the injury, Perdue and Kelley each paid one half of the premium for a short term disability insurance policy. Under this policy, Kelley was paid short term disability benefits of $2,163.71 during the period of disability.

Kelley was subsequently awarded temporary total disability benefits under Perdue's workers' compensation policy. In December 2014, Perdue filed a request with the IAB for an offset equal to 50 percent of the short term disability payments made under the short term disability policy. After a January 2015 hearing, the IAB issued an order granting the offset. In February 2015, Kelley filed this appeal of the Board's order.

## STANDARD OF REVIEW

We review an Industrial Accident Board decision for legal errors and to determine whether the decision is supported by substantial evidence.[1] Where

---

1. *Conagra/Pilgrim's Pride, Inc. v. Green,* 954 A.2d 909 (Del.2008) (citing *LeVan v. Independence Mall, Inc.,* 940 A.2d 929, 931–32 (Del. 2007)).

the issue raised involves only a question of proper application of the law, our review is *de novo.*[2] "Absent an error of law, the standard of review for a Board's decision is abuse of discretion."[3] Where the issue raised involves abuse of discretion, we will determine "whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[4] Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.[5] This Court does not weigh the evidence, determine questions of credibility or make its own factual findings,[6] and will find "the Board has abused its discretion only when its decision has 'exceeded the bounds of reason in view of the circumstances.' "[7]

## DISCUSSION

▆▆▆▆ An employer is entitled to an offset of workers' compensation benefits when the claimant has received payment from an employer provided insurance policy or benefits program.[8] Stated different-ly, "an employee cannot secure double recovery for a single loss where both sources of recovery emanate from the employer."[9] Conversely, an employer is not entitled to an offset of workers' compensation benefits when the claimant has received payment from a private insurance policy that has been purchased by the claimant.[10] "Setoffs are prohibited if the second type of benefits 'arise from a source which exists by reason of the employee's payment of separate consideration.' "[11] In other words, "if the insured has paid consideration for recovery from a collateral source, then double recovery should be allowed."[12]

▆▆▆▆ The Delaware workers' compensation statute provides a process to replace an employee's lost earnings and to cover an employee's medical expenses that result from a work related injury.[13] The twin purposes of the statute are "to provide a scheme for assured compensation for work-related injuries without regard to fault and to relieve employers and employees of the expenses and uncertainties of

2. *Vincent v. E. Shore Markets*, 970 A.2d 160, 163 (Del.2009) (citing *Baughan v. Wal–Mart Stores*, 2008 WL 1930576, at *2 (Del. May 2, 2008)).

3. *Boone v. Syab Servs./Capitol Nursing*, 2013 WL 3777153, at *1 (Del. July 16, 2013) (citing *Person–Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del.2009)).

4. *Boone*, 2013 WL 3777153, at *1 (citing *Person–Gaines*, 981 A.2d at 1161).

5. *Person–Gaines*, 981 A.2d at 1161 (quoting *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

6. *Bullock v. K–Mart Corp.*, 1995 WL 339025, at *2 (Del.Super. May 5, 1995) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66–67 (Del.1965)).

7. *Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, at *2 (Del.Super. Mar. 24, 2008) (quoting *Willis v. Plastic Materials Co.*, 2003 WL 164292, *1 (Del.Super. Jan. 13, 2003)).

8. *Briggs v. DuPont*, 1998 WL 110037, at *8 (Del.Super. Jan. 20, 1998) (citing *Guy J. Johnson Transp. Co. v. Dunkle*, 541 A.2d 551, 553 (Del.1988)).

9. *State v. Calhoun*, 634 A.2d 335, 338 (Del. 1993).

10. *Id.* at 337.

11. *State v. Brown*, 2000 WL 33225298, at *4 (Del.Super. Aug. 7, 2000) *aff'd sub nom. Brown v. State, Dep't of Corr.*, 768 A.2d 467 (Del.2001) (quoting *Calhoun*, 634 A.2d at 337).

12. *Adams v. Delmarva Power and Light Co.*, 575 A.2d 1103, 1106 (Del.1990) (citing *State Farm Mut. Auto. Ins. Co. v. Nalbone*, 569 A.2d 71, 75 (Del.1989)).

13. *Guy J. Johnson Transp. Co. v. Dunkle*, 541 A.2d 551, 552 (Del.1988).

civil litigation.".[14] Although an employee is required to accept compensation under the statute as an exclusive remedy against his employer,[15] Delaware public policy does not prohibit "a risk-averse insured from contracting for additional recovery."[16] When an employee has contracted for an additional recovery from a collateral source, the collateral source doctrine will allow for a double recovery.[17] In the case *sub judice*, this Court is asked to determine who benefits from a policy when the premiums are paid in equal proportions by the employer and the employee.

### The Collateral Source Doctrine

Payments made or benefits conferred independent of the tortfeasor, and that the tortfeasor had no part in creating, are known as collateral source benefits.[18] The collateral source rule allows an injured person to recover full damages regardless of compensation received from sources unrelated to the tortfeasor.[19] This rule advances a public policy that a tortfeasor has no right to mitigation when the plaintiff has received a benefit from an independent source.[20] The rule also encourages "citizens to purchase and maintain insurance for personal injuries and for other eventualities."[21] When a plaintiff purchases insurance, "he has established a fund meant to protect his family from want, not to immunize" the tortfeasor from expense.[22] If a tortfeasor were allowed to mitigate damages with payments from a plaintiff's collateral source, "the plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit."[23] Thus, courts generally have held that benefits received by a plaintiff from a source independent of and collateral to the wrongdoer will not diminish otherwise recoverable damages.[24]

In 1964, the Delaware Supreme Court recognized the collateral source rule as being "firmly embedded" in Delaware Law.[25] The rule is "designed to strike a balance between two competing principles of tort law: (1) a plaintiff is entitled to compensation sufficient to make him whole, but no more; and (2) a defendant is liable for all damages that proximately result from his wrong."[26] However, because the law must favor one windfall over the other, it favors the victim of the wrong.[27] As the Court explained in *Yar-*

**14.** *Kofron v. Amoco Chemicals Corp.*, 441 A.2d 226, 231 (Del.1982).

**15.** 19 *Del. C.* § 2304.

**16.** *Adams*, 575 A.2d 1103, 1106 (Del.1990) (citing *Nalbone*, 569 A.2d at 75).

**17.** *Adams*, 575 A.2d at 1106 (citing *Nalbone*, 569 A.2d at 75).

**18.** *2 Stein on Personal Injury Damages Treatise § 13:5* (3d ed.) (2015); *Restatement (Second) of Torts § 920A* (1979).

**19.** *Restatement (Second) of Torts § 920A* (1979).

**20.** *Restatement (Second) of Torts § 920A* (1979).

**21.** 77 A.L.R.3d 415 (1977) (citing *Helfend v. S. Cal. Rapid Transit Dist.*, 2 Cal.3d 1, 84 Cal. Rptr. 173, 465 P.2d 61, 77 (1970)).

**22.** *2 Stein on Personal Injury Damages Treatise § 13:5* (3d ed.) (2015).

**23.** 77 A.L.R.3d 415 (1977) (citing *Helfend*, 84 Cal.Rptr. 184, 465 P.2d at 77).

**24.** 77 A.L.R.3d 415 (1977).

**25.** *Yarrington v. Thornburg*, 205 A.2d 1, 2 (Del.1964).

**26.** *Mitchell v. Haldar*, 883 A.2d 32, 38 (Del. 2005) (internal citations omitted).

**27.** *Stayton v. Delaware Health Corp.*, 117 A.3d 521, 526 (Del.2015).

*rington*: "[t]he collateral source doctrine is predicated upon the theory that a tortfeasor has no interest in, and therefore no right to benefit from, monies received by the injured person *from sources unconnected with the defendant.*"[28] If a risk averse insured has contracted and paid consideration for a double recovery, then the recovery should be allowed.[29]

 In a no-fault insurance context, the Delaware Supreme Court recognized that "the policy goals of no-fault insurance can best be served by applications of principles of contract rather than tort law."[30] The extent to which double recovery should be allowed under the collateral source doctrine "depends upon the contractual expectations that underlie the collateral source payment."[31] "In the Court's view, any consideration that has been paid will support recovery, so long as it is not based on speculation."[32] Stated differently, even in a scenario involving no-fault insurance, an insured may receive a double recovery when he has contracted and given consideration for coverage through a collateral source.

### The IAB Properly Granted an Offset for Fifty Percent of the Short–Term Disability Proceeds.

 This case presents an interesting issue not previously presented to this Court. At issue is whether an employer is allowed to offset workers' compensation benefits when the employee receives additional benefits paid by an insurance policy which has been jointly purchased by the employer and employee. Established case law provides for the following general propositions: (1) an employer is allowed to offset workers' compensation benefits when an employee receives additional benefits paid by an insurance policy or benefit plan purchased by the employer, (2) an employer is not allowed to an offset of workers' compensation benefits when an employee receives additional benefits paid by an insurance policy purchased by the employee. These propositions are found in *Guy J. Johnson Transportation Co. v. Dunkle*[33] and *Adams v. Delmarva Power and Light Co.*[34]

Under the first proposition, an employer is allowed to offset workers' compensation payments by amounts paid to an employee by an insurance policy or benefits program that emanates from the employer. In *Dunkle*, an employee sought total disability benefits after he suffered a work-related heart attack. The employer appealed a Board award of $26,403.80 in hospital and physician charges. The employer argued that the challenged medical expenses had been paid on its behalf by its medical insurance carrier, through policies which were paid for solely by the employer. The Delaware Supreme Court held that an offset of the employee's workers' compensation claim was allowed because the employer had paid for the medical insurance policy, which in turn paid the employee's medical bills. The Court found that allowing an offset of a workers' compensation

28. *Fisher v. Beckles,* 2014 WL 703755, at *2 (Del.Super. Feb. 10, 2014).

29. *State Farm Mut. Auto. Ins. Co. v. Nalbone,* 569 A.2d 71, 75 (Del.1989).

30. *Nalbone,* 569 A.2d at 73.

31. *Ameer–Bey v. Liberty Mut. Fire Ins.,* 2003 WL 1847291, at *1 (Del.Super. Apr. 7, 2003).

32. *Ameer–Bey,* 2003 WL 1847291, at *4 (citing *Nalbone,* 569 A.2d at 76) (internal quotations omitted).

33. *Guy J. Johnson Transportation Co. v. Dunkle,* 541 A.2d 551, 553 (Del.1988).

34. *Adams v. Delmarva Power and Light Co.,* 575 A.2d 1103 (Del.1990).

award did not violate the collateral source doctrine when the insurance or benefit program had been paid for by the employer. In so finding, "the Court refused to accept the contention that there could be no offset in the absence of express legislative authority permitting subrogation."[35] Thus, an offset is proper when an employee's loss has been covered by an employer supplied insurance or benefit program.

Under the second proposition, an employer is not allowed to offset workers' compensation payments by amounts paid to an employee pursuant to an insurance policy which exists by reason of the employee's payment of separate consideration. In *Adams*, the Delaware Supreme Court considered an employer's request for an offset when a claim was asserted against an insurance policy that had been purchased by the employee. While operating the employer's motor vehicle and during the course of employment, an employee was injured in an automobile accident caused by another driver. The tortfeasor's insurance company paid the employee the tortfeasor's insurance policy limit of $25,000. The employee had independently purchased underinsured motorist coverage which paid the employee an additional $175,000.[36] The employer's workers' compensation insurer sought an offset for wages it had paid as a result of the accident. Although the workers' compensation insurer was entitled to an offset against the $25,000 recovered from the third party tortfeasor,[37] the Court held the carrier was not entitled to an offset from a collateral source for which the employee had paid consideration.

Although both propositions are well established, the Delaware Supreme Court has found exceptions. In *State v. Calhoun*,[38] a State of Delaware employee was injured in an automobile accident in the course of his employment. His injuries required that he retire on a disability pension under 29 *Del. C.* § 5524.[39] The State

---

**35.** *State v. Brown*, 2000 WL 33225298, at *5 (Del.Super. Aug. 7, 2000).

**36.** The employee's underinsured motorist policy expressly prohibited the benefits paid under the policy from applying for the benefit of a claim by any workers; compensation carrier. *Adams*, 575 A.2d at 1104–05.

**37.** 19 *Del. C.* § 2363(e) states:

In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or the employee's dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under the Workers' Compensation Act to date of recovery, and the balance shall forthwith be paid to the employee or the employee's dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits. . . .

**38.** *State v. Calhoun*, 634 A.2d 335 (Del.1993).

**39.** 29 *Del. C.* § 5524 (1993) stated:

(a) An employee who has 5 years of credited service, exclusive of service credited under § 5501(b)(4), (5) and (12) of this title, and becomes disabled shall become eligible to receive a disability pension beginning with the fourth month following the inception of his or her disability provided that such pension shall not be calculated under § 5527(a)(1)(i) of this title, unless a pension would have been payable under this chapter in effect immediately prior to the effective date of the 1976 Pension Act. Such individual shall cease to be eligible at the end of the month in which he or she recovers from disability and is again offered employment as an employee, if such recovery and offer of employment occurs before his or her attainment of age 60.

reduced the employee's weekly workers' compensation payment by the amount he received in disability payment. The employee petitioned the IAB to reinstate his full workers' compensation award, but the Board ruled it was against public policy to allow two recoveries for a single wage loss. In affirming the Superior Court's reversal of the IAB ruling, the Court reiterated the holding in *Adams*. "The Court reasoned that since the employee had paid an independent consideration for additional protection against injury, he was entitled to the benefit of his insurance contract."[40] The employee's right to a disability pension was "based on his participation in, and contributions to, the State Employees' Pension Plan."[41] The Court noted that "[a]lthough the plan is legislatively established, it is contractual in nature and, when vested, confers a constitutionally protected property right" that cannot be forfeited by implication.[42] The Court held the vested pension right was the result of a contractual arrangement supported by employee consideration and thus an offset was not proper.

Additionally, in *Simendinger v. National Union Fire Insurance Co.*,[43] the Court extended the rule in *Adams* to include employer purchased UIM benefits, but this holding is limited to cases involving third-party tortfeasors.

Kelley argues that Perdue's short-term disability program is funded much like the Delaware State Employee Pension Plan discussed in *Calhoun*, and therefore *Calhoun* is dispositive. She argues that her separate contributions to the short term disability policy premiums are analogous to the employee's separate contributions to the Delaware State Employee Pension plan. It is Kelley's contention that the *Dunkle* "no windfall" principle does not apply when duplicate benefits arise from a contractual arrangement *supported* by employee-furnished consideration. She argues that Perdue's short term disability program is funded much like the Delaware State Employee Pension Plan, and that *Calhoun* therefore prohibits an offset of the type awarded in this case.

Kelley's argument misses a key difference between the employee contribution in *Calhoun* and the employee contribution in the case at bar. In *Calhoun*, the parties were contributing to a statutorily created instrument. Once the employee chose to participate in the pension plan, State contributions were mandatory. Although legislatively established, the plan was contractual in nature. An employee would become vested after participating in the plan for five years, and thereafter would have a constitutionally protected property right in the pension. Kelley's

(b) Such an employee shall be kept on the active payroll and receive credited service from the inception of his disability to the end of the third month following and shall receive payments at the same rate of compensation he received before he became disabled.

(c) An employee shall be deemed disabled for the purposes of this section if he has a physical or mental disability which prevents him from performing the duties of his position.

**40.** *Calhoun*, 634 A.2d at 338.

**41.** *Id.*

**42.** *Id.*

**43.** *Simendinger v. National Union Fire Ins. Co.*, 74 A.3d 609 (Del.2013) (holding that the ability of a workers' compensation insurer to assert a lien against the UIM payments made pursuant to the employer's UIM policy had been eliminated by the 1993 revisions to 19 *Del. C.* § 2363(e), and noting that reimbursement had been expressly limited by a provision providing that "reimbursement shall be had only from the third party liability insurer....").

circumstance is distinguishable in that the disability insurance plan was voluntarily established by Perdue, Perdue's contributions to the insurance plan were voluntary, and there was no vesting in the plan. If Perdue decided to discontinue the program, Kelley would have had no constitutionally protected property rights. Therefore, Kelley's argument that *Calhoun* is controlling based on funding similarities between Perdue's insurance plan and the State's pension plan fails.

*Dunkle* and *Adams* establish that employers are generally entitled to an offset when the employer has provided a collateral source of compensation, and that the employer is not entitled to an offset when the employee has provided the collateral source of compensation. Whether an employer is entitled to an offset when **both** employer and employee have contributed to the purchase of a collateral source of compensation is an issue of first impression in Delaware, but this issue has been addressed in other states. The Supreme Court of Alabama addressed the issue in *Ex Parte City of Birmingham*[44] in determining whether the city of Birmingham was allowed to offset an employee's workers' compensation award by an amount paid by collateral source funded by both the city and the employee. Although this case involved a question of statutory interpretation,[45] the court found that because the city had contributed fifty percent to the collateral source, the city was entitled to receive an offset equal to fifty percent of the payments made from that source.

The Commonwealth Court of Pennsylvania came to a similar conclusion in *Frank v. W.C.A.B (Marathon Physical Therapy, Inc.).*[46] Here, the court noted that "the crucial factor is the identity of the party who is paying for the insurance benefit," and based on the employer's fifty percent contribution to the premium for sickness and accident benefits, granted an offset equivalent to fifty percent of the benefits paid.

Both employer and employee are entitled to reap the rewards of their investments. In this case, both employer and employee contributed to a policy that provided benefits to Kelley after she became injured. The IAB ruled that each side would benefit in proportion to their contribution. Kelley argues that the collateral source at issue in this case would not exist without Kelley's contribution, but neither would the collateral source exist without Perdue's contribution. The IAB's decision to allow the offset is proper and well grounded in existing common law.

### Interpretation of Existing Common Law is not Legislating

 The General Assembly is presumed to know the effect of the common law on its statutes.[47] Thus, failure to amend a well established common law rule must be taken as the General Assembly's intent to retain that rule.[48] Additionally, "where the General Assembly has not defined a right, remedy, or obligation ...,

44. *Ex Parte City of Birmingham,* 988 So.2d 1035 (Ala.2008).

45. The Alabama Supreme Court interpreted a section of the Alabama Workers' Compensation Act as requiring a proportional offset.

46. *Frank v. W.C.A.B (Marathon Physical Therapy, Inc.),* 2013 WL 3960970, at *4 (Pa. Commw.Ct. Mar. 4, 2013).

47. *Progressive N. Ins. Co. v. Mohr,* 47 A.3d 492, 512 (Del.2012) (citing *Makin v. Mack,* 336 A.2d 230 (Del. Ch.1975)).

48. *Associated Transp. v. Pusey,* 118 A.2d 362, 364 (Del.Super. 1955).

courts should apply the common law." [49] The responsibility of amending or repealing a law that is questioned as unjust lies with the General Assembly. [50] A Judge's personal predilections as to what the law should be has no place in the interpretation of laws, [51] and "Judges must take the law as they find it," [52] However, it is the Court's responsibility to interpret existing laws, and the execution this responsibility should not be misconstrued as legislating. [53] The collateral source rule has been firmly embedded in Delaware law for more than fifty years. There has been no clear statutory mandate to change the rule, and absent such a mandate, "[t]his Court will not do by judicial implication what the General Assembly itself has declined to do by express legislation." [54]

Kelley contends that the IAB was improperly legislating because the offset at issue was not specifically provided for by the General Assembly. Kelley argues that it is up to the General Assembly, and not an administrative tribunal, to provide for an offset in connection with a co-funded insurance program. However, the Delaware Supreme Court has stated that they "do not accept the contention that there may be no offset of claimed benefits in the absence of express legislative authority" and that "[n]o statutory authority is required to deny recovery for losses which did not, in fact, occur or expenses not, in fact, sustained." [55]

Kelley argues that the IAB is legislating in this matter and that it is up to the General Assembly to provide for an offset in connection with a co-funded short term disability insurance program. Kelley's view is impractical and thwarts generally accepted rules of statutory construction. A broad application of Kelley's argument would require the General Assembly to predict every possible scenario under which a new law might be applied, and if a specific scenario was not contemplated, the law would not apply despite the General Assembly's intent. The IAB properly considered existing common law and applied it to the scenario presented in the current case. In considering this appeal, this Court has also properly considered existing common law, law which has not been abrogated by legislative fiat, and applied it to the scenario presented in this case.

## CONCLUSION

Both employer and employee are entitled to reap the rewards of their investments. In this case, both employer and employee contributed to a policy that provided benefits to Kelley after she became injured. The IAB ruled that each side would benefit in proportion to their contribution. Kelley argues that the collateral source at issue in this case would not exist without Kelley's contribution, but neither would the collateral source exist without Perdue's contribution. Thus, for the foregoing reasons, the decision of the Board is **AFFIRMED**.

IT IS SO ORDERED.

49. *CML V, LLC v. Bax,* 28 A.3d 1037, 1045 (Del.2011).

50. *Id.*

51. *Leatherbury v. Greenspun,* 939 A.2d 1284, 1292 (Del.2007) (citing *Ewing v. Beck,* 520 A.2d 653, 658 (Del.1987)).

52. *Id.*

53. *Id.*

54. *State v. Fletcher,* 974 A.2d 188, 194 (Del. 2009).

55. *Dunkle,* 541 A.2d at 553.