# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NATHAN L. CENTERS, M.D., | ) | |
| | ) | |
| Appellant, | ) | C.A. No. 16A-08-007 FWW |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE BOARD OF MEDICAL | ) | |
| LICENSURE AND DISCIPLINE, | ) | |
| | ) | |
| Appellee. | ) | |

Submitted: June 9, 2017
Decided: June 12, 2017

On Appeal from the Delaware Board of Medical Licensure and Discipline:
**AFFIRMED**.

## **ORDER**

Daniel A. Griffith, Esquire, Whiteford, Taylor & Preston LLC, 405 North King Street, Suite 500, Wilmington, Delaware 19801; Attorney for Appellant Nathan L. Centers, M.D.

Stacey X. Stewart, Esquire, Delaware Department of Justice, 820 North French Street, Wilmington, Delaware 19801; Attorney for Appellee Delaware Board of Medical Licensure and Discipline.

**WHARTON, J.**

This 12th day of June, 2017, upon consideration of Appellant Nathan L. Centers' ("Appellant") Opening Brief, Appellee Delaware Board of Medical Licensure and Discipline's ("Appellee") Answering Brief, Appellant's Reply Brief, and the record, it appears to the Court that:

1.      Appellant is a medical doctor with board certifications in general psychiatry and adolescent psychiatry.[1]   Since 2002, Appellant has been the Medical Director at Kent Sussex Community Services ("KSCS") where he provides methadone-addiction treatment and outpatient services to individuals.[2]

2.      M.S. also worked at KSCS as a registered nurse.[3] A therapist treating M.S.'s son opined that M.S. should be evaluated by a physician to determine whether she had Attention Deficit Hyperactivity Disorder ("ADHD").[4] Therefore, in December 2005, M.S. approached Appellant about her potential ADHD.[5] Appellant evaluated M.S. and prescribed her Adderall.[6] Appellant continued to "episodically" treat M.S. for six months until she left her employment at KSCS.[7]

---

[1] App. to Appellee's Answering Br., D.I. 10, at A-18.
[2] *Id.*
[3] *Id.* The patient's initials are used in this decision to ensure that patient privacy is protected. *Id.* at A-50.
[4] *Id.* at A-19.
[5] *Id.*
[6] *Id.*
[7] *Id.* at A-9.

In or around 2012, Appellant began to treat M.S. again for ADHD when she resumed her employment at KSCS.[8]

3. At some unspecified date, the State of Delaware, Division of Professional Regulation ("DPR") began investigating M.S. for prescription fraud.[9] Specifically, DPR had reason to believe that M.S. was forging prescriptions of Xanax, Adderall, and Vyvanse in Appellant's name for herself and her family members.[10]

4. As part of DPR's investigation, Appellant's care of M.S., including his patient records, came under scrutiny. On July 16, 2015, a DPR investigator sent a subpoena *duces tecum* to Appellant, requesting his patient records of M.S.[11] Appellant responded to the subpoena by providing six pages of records to DPR.[12] Three pages of the provided records include a list of dates on which Appellant prescribed M.S. Adderall. The other three pages that Appellant produced are "evaluative" records with the caption "Psychiatric Evaluation/Progress Note."[13] They too provide M.S.'s Adderall prescription for a given month, and that M.S.

---

[8] *Id.*
[9] *Id.* at A-120.
[10] *Id.*
[11] *Id.* at A-181.
[12] *Id.* at A-183–A-185.
[13] *Id.* at A-186–A-188.

3

"[w]ill continue [treatment] as above."[14]  DPR subsequently referred its investigation of Appellant to the Delaware Department of Justice ("DOJ").

5.  On October 27, 2015, the DOJ initiated a formal disciplinary proceeding against Appellant by filing a Complaint with the Board of Medical Licensure and Discipline ("Board").[15]  On February 26, 2016, the DOJ filed an Amended Complaint.[16]  The Amended Complaint contained several allegations against Appellant, but for purposes of this appeal, only two are relevant.[17]  First, the Amended Complaint alleged Appellant "engaged in dishonorable, unethical or other conduct likely to defraud, deceive or harm the public in violation of 24 *Del. C.* § 1731(b)(3) and Board Rule 8.1.13 as he failed to adequately maintain and properly document patient records."[18]  Second, it alleged Appellant "violated 24 *Del. C.* § 1731(b)(11) as he is guilty of misconduct, incompetence, gross negligence or a pattern of negligence in the practice of medicine."[19]

---

[14] *Id.*

[15] *Id.* at A-245.

[16] *Id.* at A-247.

[17] *Id.*

[18] *Id.* at A-248. *See* § 1731(b)(3) ("'Unprofessional conduct' includes but is not limited to any of the following acts or omissions: . . . (3) Any dishonorable, unethical, or other conduct likely to deceive, defraud, or harm the public . . . ."). The Board has promulgated regulations that set forth specific acts it considers "dishonorable" or "unethical" conduct. 24 Del. Admin. C. 1700-8.1.13 states that a "[f]ailure to adequately maintain and properly document patient records" is "dishonorable" or "unethical" conduct.

[19] App. to Appellee's Answering Br., D.I. 10, at A-248. *See* § 1731(b)(11) ("'Unprofessional conduct' includes but is not limited to any of the following acts or omissions: . . . (11) Misconduct, including but not limited to sexual misconduct, incompetence, or gross negligence or *pattern of negligence* in the practice of medicine or other profession or occupation regulated under this chapter." (emphasis added)).

4

6. On April 4, 2016, a DPR Hearing Officer ("Hearing Officer") conducted an evidentiary hearing on the matter pursuant to 29 *Del. C.* § 8735(v)(1)(d). Appellant was the only individual who testified at the hearing.[20]

7. On May 6, 2016, the Hearing Officer issued his recommendation to the Board. The Hearing Officer found Appellant violated 24 *Del. C.* § 1731(b)(3) and 24 Del. Admin. C. 1700-8.1.13 for failing to adequately maintain patient records.[21] Specifically, the Hearing Officer found that the records provided merely indicate the dates on which Appellant prescribed M.S. Adderall.[22] Other than one recorded comment on March 7, 2014 stating that "[s]ymptoms reported as more prevalent," the Hearing Officer found there was no comment that "could fairly be characterized as an evaluative or progress note."[23] While 24 Del. Admin. C. 1700-8.1.13 does not define the phrase "properly document," the Hearing Officer concluded that a "chart which does little or nothing to inform a subsequent provider on a course of treatment does not . . . satisfy minimal professional responsibilities as a matter of law."[24] Appellant's charting methods, according to the Hearing Officer, "would do little to inform other providers of the progression

---

[20] App. to Appellee's Answering Br., D.I. 10, at A-45.

[21] The Hearing Officer, in making his recommendation, focused on patient records "maintained (or not maintained) by Dr. Centers after M.S. returned to his care in or around 2012." *See id.* at A-29. Only one patient record exists prior to M.S.'s return in 2012, which was Appellant's initial evaluation of M.S. in 2005. Notably, Appellant did not provide this patient record to DPR in response to the subpoena.

[22] *Id.* at A-29.

[23] *Id.* at A-29.

[24] *Id.* at A-30.

of M.S.'s symptoms, his course of treatment and rationale, and the medically justified reasons why [M.S.'s] Adderall dosing was altered from time to time."[25] As a result, the Hearing Officer found Appellant's documentation fell "below a minimally required standard as contemplated in Bd. Reg. 8.1.13."[26] And, although Appellant testified that patient records were for his own keeping, the Hearing Officer noted that Appellant's failure to recall certain details regarding his treatment of M.S. at the hearing demonstrated that his records did not adequately inform himself, let alone any other medical providers.[27]

8.     The Hearing Officer also concluded Appellant violated 24 *Del. C.* § 1731(b)(11) by engaging in a "pattern of negligence."[28] Following the reasoning above, the Hearing Officer found Appellant's record-keeping practices did not reflect that degree of documentation that a reasonably prudent psychiatrist would create and maintain.[29] The Hearing Officer further determined that the records reflect Appellant's inattentiveness to properly document patient records over an extended period of time.[30]

9.     After finding that Appellant violated the above-mentioned statutory provisions, the Hearing Officer considered the statutory guidelines for discipline as

---

[25] *Id.* at A-30.
[26] *Id.* at A-30.
[27] *Id.* at A-31.
[28] *Id.* at A-32.
[29] *Id.*
[30] *Id.*

well as aggravating and mitigating factors.[31] The Hearing Officer then recommended that the Board place Appellant on probation for a period of six months.[32] At end of the probationary period, the Hearing Officer recommended that Appellant be permitted to petition the Board to end probation on showing that he completed six continuing medical education ("CME") hours for record-keeping and three CME hours for treatment of ADHD in adult patients.[33] The Hearing Officer also recommended that Appellant pay a $1,000 fine.[34] If Appellant fails to satisfy the probationary conditions, the Hearing Officer recommended that Appellant's license be suspended after said probationary period without any further notice or hearing.[35]

10. On July 20, 2016, the Board affirmed the Hearing Officer's legal conclusions regarding the specific violations.[36] However, the Board modified the

---

[31] *Id.* at A-32–A-33.

[32] *Id.* at A-32.

[33] *Id.* at A-33.

[34] *Id.*

[35] *Id.* Pursuant to 29 *Del. C.* § 8735(v)(1)(d), after the Hearing Officer submits its recommendation to the Board, the parties "shall have 20 days to submit written exceptions, comments and arguments concerning the conclusions of law and recommended penalty." By letter dated May 24, 2016, Appellant submitted exceptions to the Board, arguing that his record-keeping practices exceeded the standard of care and that substantial evidence did not support the Hearing Officer's findings. App. to Appellee's Answering Br., D.I. 10, at A-2.

[36] App. to Appellee's Answering Br., D.I. 10, at A-3; § 8735(v)(1)(d) ("Upon completion of such hearing or the taking of such testimony and evidence, the hearing officer shall submit to the board or commission findings and recommendations thereon. The findings of fact made by a hearing officer on a complaint are binding upon the board or commission. The board or commission may not consider additional evidence. . . . The board or commission shall make its final decision to affirm or modify the hearing officer's recommended conclusions of law and proposed sanctions based upon the written record.").

7

Hearing Officer's recommended discipline "in order to properly protect the public."[37] The Board agreed that Appellant should be on probation for six months, but added that Appellant "shall not practice medicine independently" during that time period.[38] In addition to the recommended CMEs, the Board mandated three CME hours for ethics and three CME hours for safely prescribing controlled substances.[39] Finally, the Board mandated that Appellant be audited by an independent agency at Appellant's expense.[40]

11. On August 19, 2016, Appellant filed a Notice of Appeal to this Court pursuant to 24 *Del. C.* § 1736, 29 *Del. C.* § 10142, and Superior Court Civil Rule 72.[41]

12. Appellant contends the Board's decision should be reversed because it is not supported by any evidence in the record.[42] Appellant acknowledges the

---

[37] App. to Appellee's Answering Br., D.I. 10, at A-3.
[38] *Id.* at A-3.
[39] *Id.*
[40] *Id.*
[41] Appellant filed a Notice of Appeal on August 19, 2016, but it was rejected by the Prothonotary's Review Clerk. *See* D.I. 14. A second submission was filed on August 23, 2016 and was accepted on August 24, 2016. *See* D.I. 14. In the Court's view, an accepted filing is considered filed on the date it was successfully completed without regard to when it was accepted, but a rejected filing is not considered filed at all regardless of when the transaction was successfully completed. As such, the acceptance of the Notice of Appeal on August 24th relates back to the submission on August 23rd, not August 19th. Pursuant to Administrative Directive No. 2007-6, however, if an electronic filing is not filed with the Prothonotary because it is rejected, "the Court may upon satisfactory proof enter an order permitting the document to be filed or served nunc pro tunc to the date it was first attempted to be sent electronically." *See* D.I. 15. By Order dated June 9, 2017, the Court adjudged that Appellant's Notice of Appeal was filed *nunc pro tunc* on August 19, 2016. Therefore, Appellant's appeal is deemed timely.
[42] Appellant's Opening Br., D.I. 9, at 14–15.

8

Board is not required to call an expert witness in disciplinary proceedings to prove that Appellant deviated from the applicable standard of care.[43] Appellant also acknowledges the Board has sufficient expertise to determine whether the standard of care was breached.[44] However, Appellant contends the Board is still required to have substantial evidence to support its finding.[45] Appellant argues his testimony reveals he met, and even exceeded, the standard of care with respect to his record-keeping practices.[46] Appellant argues no evidence was offered to rebut his testimony.[47] Without such evidence, the conclusion that his record-keeping practices did not meet the standard of care cannot withstand scrutiny on appeal.

13. If the violations were affirmed, however, Appellant contends some of the disciplinary measures should be reversed because they are "so impracticable as to be incapable of implementation."[48] For example, the Board mandated that Appellant be audited during the probationary period. Appellant argues an audit would be impossible, since Appellant is not in private practice—he is a full-time employee of the State, and "[t]he records on the patients that he sees are not in [his] dominion, custody or control."[49] As to the Board's mandate that prohibits Appellant from practicing 'independently" during his probationary period,

---

[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.* at 16–17.
[47] *Id.*
[48] *Id.* at 19–20.
[49] *Id.*

9

Appellant says he "is unsure what that means."[50] If it means Appellant cannot see his patients, then Appellant argues "it would threaten treatment of many at-risk patients."[51]

14. In response, Appellee asserts its finding that Appellant failed to keep adequate patient records is supported by substantial evidence in the record. To support this argument, Appellee points to the fact that there were few records.[52] The records that were provided contained very few substantive comments.[53] Moreover, by Appellant's own admission on cross-examination, there were numerous errors regarding the prescription dosages and the dates on which Adderall was prescribed.[54] Further, Appellant's own testimony revealed his charting practices did not adequately inform himself of M.S.'s treatment, as he based many of his answers on speculation.[55] Appellee thus argues that substantial evidence exists to support the conclusion that Appellant's record-keeping practices did not satisfy the standard of care within the profession.

15. Appellee also argues it did not abuse its discretion by imposing the above-mentioned penalties on Appellant. Appellee argues it has the discretion to impose penalties within certain statutory guidelines, and it acted within those

[50] *Id.*
[51] *Id.*
[52] Appellee's Answering Br., D.I. 10, at 20–21.
[53] *Id.*
[54] *Id.* at 21.
[55] *Id.*

10

guidelines.[56] Appellee contends that subjecting Appellant to an audit ensures he maintains adequate records moving forward.[57] As to forbidding Appellant from practicing "independently" during the probationary period, Appellee argues its purpose is to ensure that other physicians supervise Appellant.[58] Appellee asserts this punishment is reasonable in light of Appellant's negligent record keeping. Therefore, Appellee argues the imposed discipline must be affirmed.

16. The decision of an administrative agency must be affirmed on appeal so long as it is supported by substantial evidence and is free from legal error.[59] Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.[60] While a preponderance of evidence is unnecessary, substantial evidence means "more than a mere scintilla."[61] Questions of law are reviewed *de novo*,[62] but because the Court does not weigh evidence, determine

---

[56] *Id.* at 29–30.

[57] *Id.* at 30.

[58] *Id.*

[59] *Conagra/Pilgrim's Pride, Inc. v. Green*, 2008 WL 2429113, at *2 (Del. June 17, 2008); *Jordan v. Bd. of Pension Trs. of Del.*, 2004 WL 2240598, *2 (Del. Super. Sept. 21, 2004); *King v. Bd. of Pension Trs. of Del.*, 1997 WL 718682, at *3–*4 (Del. Super. Aug. 29, 1997). *See also* 29 *Del. C.* § 10142(d) ("The Court, when factual determinations are at issue, shall take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted. The Court's review, in the absence of actual fraud, shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency.").

[60] *Kelley v. Perdue Farms*, 123 A.3d 150, 153 (Del. Super. 2015) (citing *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

[61] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

[62] *Kelley*, 123 A.3d at 152–53 (citing *Vincent v. E. Shore Markets*, 970 A.2d 160, 163 (Del. 2009)).

questions of credibility, or make its own factual findings,[63] it must uphold the decision of the administrative agency unless the Court finds that the agency's decision "exceeds the bounds of reason given the circumstances."[64]

17. The Court finds substantial evidence exists in the record to support the Board's finding that Appellant violated 24 *Del. C.* § 1731(b)(3) and 24 Del. Admin. C. 1700-8.1.13. Appellant adamantly contends there is no evidence to rebut his testimony that his records met, and even exceeded, the standard of care. This is simply untrue. Appellant's own testimony, upon which the Board relied, reveals that his records of M.S. were replete with errors and deficiencies. For example, when Appellant was asked why he changed the dosage of Adderall in February 2013, he "presume[d]" it was not "adequately taking care of the problem."[65] When Appellant was asked why he wrote down "[s]ymptoms reported as more prevalent," Appellant "guess[ed]" M.S. stopped by and had a discussion about it.[66] The Board found that such speculative answers on important questions proves Appellant failed to properly document M.S.'s treatment plan.[67] The testimony also reveals that M.S.'s records contained numerous errors, such as incorrect medication dosages and prescription dates, and Appellant admitted to

---

[63] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66–67 (Del. 1965)).
[64] *Bromwell v. Chrysler LLC*, 2010 WL 4513086, at *3 (Del. Super. Oct. 28, 2010) (quoting *Bolden v. Kraft Foods*, 2005 WL 3526324, at *3 (Del. Dec. 21, 2005)).
[65] App. to Appellee's Answering Br., D.I. 10, at A-104.
[66] *Id.* at A-109, A-111–A-113.
[67] *Id.* at A-30–A-31.

12

these errors.[68] If the purpose of the regulation is to inform subsequent medical providers about a patient's treatment history, as the Hearing Officer suggests, then the Board had substantial evidence to conclude that Appellant came up short in meeting this standard. Additionally, there is substantial evidence to support the Hearing Officer's conclusion that the records were inadequate even to inform Appellant of his own patient's medical history.

18. As to the Board's finding that Appellant violated 24 *Del. C.* § 1731(b)(11) by engaging in a "pattern of negligence," the Court finds substantial evidence exists to support this conclusion as well. Following the reasoning above, the Hearing Officer articulated factual findings proving that Appellant was careless in documenting records over the course of writing approximately twenty-four prescriptions of Adderall for M.S.[69]

---

[68] Appellant argues this case is factually distinguishable from *Bilski v. Bd. Med. Licensure and Discipline*, 2014 WL 3032703 (Del. Super. June 30, 2014), because the physician in *Bilski* "acknowledged" that his record-keeping practices were deficient. *See* Appellant's Opening Br., D.I. 9, at 15–16. Appellant states that the physician's "admissions concerning the inadequacy of his record-keeping practices provided the 'substantial evidence' to support the discipline." *See id.* Appellant here did the same. *See* App. to Appellee's Answering Br., D.I. 10, at A-113, A-114, A-105, A-104, A-107. *See also id.* at A-103 ("Q. So the prescription does not actually correspond with your patient record here? A. My notation was wrong."); A-109 ("Q. I will represent to you that numerous prescriptions in this list are inconsistent with the dates prescribed and the milligrams in quantity. So is your testimony the same for each, that your notations were wrong? A. Yes, ma'am. Excepting those which I did not write or sign."); A-112 ("Q. So do you believe your written entries are incorrect, then? A. I believe I got the dose wrong, if that's what you mean, yes.").

[69] Admittedly, the Court is confused by Appellant's argument, as is Appellee. Appellant concedes an expert is not required in disciplinary proceedings, as opposed to medical malpractice suits. *See Bilski*, 2014 WL 3032703, at *4. Yet, Appellant argues the Board erred because it determined that Appellant failed to meet the standard of care without any evidence showing what

13

19. Finally, the Court finds the discipline imposed upon Appellant is not arbitrary or capricious. The Hearing Officer acknowledged the statutory guidelines for each violation.[70] For a violation of § 1731(b)(3), the recommended discipline ranges from a $1,000 fine to license suspension for six months.[71] For a violation of § 1731(b)(11), the recommended discipline ranges from one year license probation to license suspension with reinstatement conditioned on a showing of satisfactory improvement.[72] The Hearing Officer weighed the "mitigating" and "aggravating" factors that are set forth in the regulations and imposed discipline within the statutory guidelines.[73] The Board slightly modified the Hearing Officer's recommended discipline but also remained within the guidelines. Moreover, there is no record evidence to support Appellant's argument that certain sanctions imposed by the Board are incapable of implementation. Accordingly, the discipline imposed upon Appellant will not be disturbed.

---

the standard encompasses. These assertions, in the Court's view, appear to be in direct contradiction with one another.

[70] App. to Appellee's Answering Br., D.I. 10, at A-32.

[71] 24 Del. Admin. C. 1700-17.5.1.

[72] 24 Del. Admin. C. 1700-17.3.2.

[73] The Hearing Officer found the following "mitigating" factors to be present: (1) absence of prior disciplinary record; (2) absence of dishonest or selfish motive; (3) consent of patient; (4) no apparent vulnerability of patient; (5) no significant injury caused by conduct; (6) no evidence of criminal, dishonest, or personal gain; (7) present fitness of the practitioner; and (8) practitioner's present competence in medical skills. See 24 Del. Admin. C. 1700-17.15. The Hearing Officer found the following "aggravating" factors to be present: (1) frequency of acts; (2) failing to comply with rules; and (3) pattern of misconduct. See 24 Del. Admin. C. 1700-17.14. The Hearing Officer concluded that the mitigating factors outweigh the aggravating factors. App. to Appellee's Answering Br., D.I. 10, at A-33.

14

THEREFORE, the decision of the Delaware Board of Medical Licensure and Discipline is hereby **AFFIRMED**.


**IT IS SO ORDERED.**

_____
Ferris W. Wharton, J.