# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

WILLIAM O'NEAL,      )
     )
     Employee-Below, Appellant,      )    C.A. No. N21A-12-004 FWW
     )
     v.      )
     )
RUAN TRANSPORTATION,      )
     )
     Employer-Below, Appellee.      )

Submitted: May13, 2022
Decided: June 2, 2022

## MEMORANDUM OPINION

*On Appeal from the Industrial Accident Board:*
**REVERSED and REMANDED**.

Kenneth F. Carmine, Esquire, LAW OFFICES KENNETH F. CARMINE, P.A. 1719 Delaware Avenue, P.O. Box 30409, Wilmington, DE 19806; Attorney for Appellant William O'Neal.

Nathan V. Gin, Esquire, Vance E. Davis, Esquire, 300 Delaware Avenue, 17th Floor, P.O. Box 1630, Wilmington, DE 19899; Attorneys for Appellee Ruan Transport Corporation.

**WHARTON, J.**

# I.     INTRODUCTION

William O'Neal ("O'Neal") filed a Notice of Appeal on December 12, 2021 seeking a review of the November 18, 2021 decision by the Industrial Accident Board ("Board").  The Board considered Ruan Transportation's[1] ("Ruan") Petition for Review of an Agreement as to Compensation, and determined that O'Neal, who previously had been determined to be totally disabled, was able to return to work as of July 1, 2021 with an earnings capacity of $1,015.89.  The single issue O'Neal raises in his appeal is whether that figure is supported by substantial evidence.  Upon consideration of the pleadings before the Court and the record below, the Court finds that the Board' calculation of O'Neal's earnings capacity is not supported by substantial evidence and is inconsistent with the methodology the Board purported to adopt.  Accordingly, the Board's decision is **REVERSED,** and the matter **REMANDED** to the Board.

# II.     FACTUAL AND PROCEDURAL CONTEXT

The Board's decision sets out the procedural posture of the case.  O'Neal was involved in a compensable work related accident on March 31, 2017 while working for Ruan as a truck driver.[2]  As a result of the accident, O'Neal received workers' compensation benefits, including payment for five surgeries and other related

---

[1] Counsel identifies their client as Ruan Transport Corporation, while the Notice of Appeal identifies the Appellee as Ruan Transportation.
[2] Decision on Petition for Review Termination, at 2 (Nov. 18, 2021).

medical expenses as well as compensation for lost wages.[3]   At the time of the accident, O'Neal's average weekly wage was $1,096.62.[4]  Following the accident, he received temporary total disability benefits of $689.45 per week paid by the Workers' Compensation Fund.[5]

On March 5, 2021, Ruan filed a Petition for Review seeking to terminate O'Neal's entitlement to total disability benefits, arguing that O'Neal was physically capable of returning to work in a capacity that approximates his pre-accident compensation.[6]  O'Neal opposed termination, claiming that he was an actual and *prima facie* displaced worker entitled to receive ongoing benefits.[7]

The Board held a hearing on November 8, 2021.  O'Neal did not dispute that he had been released to sedentary to light duty work by his surgeon, Mark Eskander, M.D. on July 1, 2021.[8]  After hearing testimony from Barbara Riley, Ph.D., who was called by Ruan as a vocational expert, and by O'Neal, the Board determined that O'Neal failed to demonstrate that that he had conducted a reasonable job search within his limitations, or that he was a *prima facie* displaced worker.[9]  As a result,

---

[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] O'Neal's Op. Br., at 1, D.I. 9.
[9] Decision on Petition for Review Termination, at 13-15 (Nov. 18, 2021).

the Board granted Ruan's Petition for Termination.[10]  The Board then evaluated O'Neal's likely wages upon his return to work based on jobs identified by Dr. Riley in her Labor Market Survey from July 1, 2021 forward.[11]  The Board identified "a total of seven sedentary positions with the following employers: AAA Club Alliance, Sobieski Services, CAPP USA, Inc., LinCare, Inc., Mid Atlantic Packaging, TC – The Cellular Connection, Winner Ford Hyundai, and TTEC."[12] The Board determined that these jobs provided average weekly wages from $865.77 to $1,166.02.[13]  The Board bore in mind that due to his absence from the labor force for a number of years, O'Neal was likely to start at the lower end of the pay scale.[14] The Board noted that all of these jobs were sedentary and if O'Neal expanded his job search to the higher end of his physical capabilities, - light duty - he might earn more.[15]  Accordingly, the Board found that the average of the two ranges - $1,015.89 - was the best indicator of O'Neal's earning potential should he re-enter the labor force, resulting in a partial disability payment of $53.82.[16]

---

[10] *Id.,* at 15.
[11] *Id.*
[12] *Id.*  Although the Board's decision referenced seven positions, it listed eight employers.  One – AAA Club Alliance – was a part time position.  The other seven were full time.  The Board only considered full time positions.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.,* at 15-16.  The figure of $1,015.89 is $80.73 less than his wages of $1,096.62.  Two-thirds of $ $80.73 is $50.82.

4

## III. THE PARTIES' CONTENTIONS

O'Neal disputes the Board's determination that his earning capacity is $1,1015.89 per week, contending there was no vocational evidence to support that wage.[17] More particularly, he contends that of the seven jobs that Dr. Riley identified in her Labor Market Survey, only four remained available as of the date of the hearing.[18] The average weekly compensation for those jobs ranged from a low of $738.63 to a high of $979.04, and it is from that range that the Board should have made its calculation.[19]

In response, Ruan argues that the Board's determination that O'Neal's earning potential was $1,015.89 is supported by substantial evidence. Citing *Guyer v. Atl. Realty Mgmt.*[20] Ruan contends that the Board properly considered all seven jobs in the Labor Market Survey, since they all were available contemporaneously with the time O'Neal was capable of working.[21]

In reply, O'Neal assumes that it was not error for the Board to consider all seven jobs and not limit itself to the four that were available at the time of the

---

[17] O'Neal's Op. Br., at 5, D.I. 9.
[18] *Id.*, at 7.
[19] *Id.*
[20] 2013 WL 178730, at *5 (Del. Super. Ct. Apr. 24, 2013).
[21] Ruan's Ans. Br., at 11, D.I. 10.

5

hearing.[22]  Nonetheless, he argues that, even adopting the Board's methodology, the Board miscalculated.[23]  Using only the highest wage for each of the jobs Dr. Riley identified, the total of the earnings for those positions is $6,996.15, yielding a high end average of $999.45, not $1,166.02 as the Board concluded.[24]  Further, the Board's determination departs from Dr. Riley's conclusion that the average weekly compensation for full-time work would be between $687.79 and $880.93.[25]

## IV.  STANDARD OF REVIEW

The Board's decision must be affirmed so long as it is supported by substantial evidence and is free from legal error.[26]  Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.[27]  While a preponderance of evidence is not necessary, substantial evidence means "more than a mere scintilla."[28]  Questions of law are reviewed *de novo*,[29] but because the Court does not weigh evidence, determine questions of credibility, or make its own factual

---

[22] O'Neal's Reply Br. at 3, D.I. 13.

[23] *Id.,* at 5.

[24] *Id.*

[25] *Id.*

[26] *Conagra/Pilgrim's Pride, Inc. v. Green*, 2008 WL 2429113, at *2 (Del. June 17, 2008).

[27] *Kelley v. Perdue Farms*, 123 A.3d 150, 153 (Del. Super. 2015) (citing *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

[28] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

[29] *Kelley*, 123 A.3d at 152–53 (citing *Vincent v. E. Shore Markets*, 970 A.2d 160, 163 (Del. 2009)).

findings,[30] it must uphold the decision of the Board unless the Court finds that the Board's decision "exceeds the bounds of reason given the circumstances."[31]

## V.    DISCUSSION

In its Decision, the Board properly took into consideration the seven full-time positions identified by Dr. Riley that were contemporaneously available from July 1, 2021 until the date of the hearing.[32]  The Court finds that the Board also properly exercised its discretion in considering O'Neal's absence from the work force in recognizing that he might have to start on the low end of the pay scale.  The Court also finds that the Board properly found that O'Neal could increase his earning capacity by expanding his search to the higher end of his physical capabilities.

While the latter two discretionary determinations above are subjective and necessarily import a degree of imprecision into the final calculation, it is where the Board attempts to be precise that it goes astray.  In making its calculation based on the seven full-time positions identified by Dr. Riley as contemporaneously available after July 1st, the Board states that those positions "provide average weekly wages ranging from $865.77 on the low end to $1166.02 on the high end."[33]  Unfortunately,

---

[30] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66–67 (Del. 1965)).
[31] *Bromwell v. Chrysler LLC*, 2010 WL 4513086, at *3 (Del. Super. Oct. 28, 2010) (quoting *Bolden v. Kraft Foods*, 2005 WL 3526324, at *3 (Del. Dec. 21, 2005)).
[32] Decision on Petition for Review Determination, at 15 (Nov. 18, 2021); *See Guyer,* at *5.
[33] *Id.*, at 15.

the Board does not show its work.  By the Court's calculation the total of the high end wages for the seven jobs is $6,996.15.[34]  Dividing that total by seven yields an average high end wage of $999.45, and not the Board's high end average of $1,166.02.[35]  Similarly, the total for the low end wages is $5,194.61.[36] Dividing that by seven results in a low end average of $742.09, and not Board's figure of $865.77.  Thus, by the Court's calculations, the average weekly wage range from July 1st until November 8th would be $742.09 to $999.45, instead of the Board's range of $865.77 to $1,166.02.[37]  Averaging the high and low totals as the Board did produces a weekly earnings potential of $870.77, not $1,015 as the Board calculated.  Thus, O'Neal's weekly earnings loss is $1,096.62 minus $870.77, or $225.85, instead of $80.73.  Applying the two-thirds partial disability calculation as the Board did yields a partial disability payment of $150.57, instead of the Board's partial disability payment of $53.82.

---

[34] $720.00 (Sobieski Services) + $1,800.00 (CAP USA, Inc.) + $600.00 (LinCare, Inc.) + $600.00 (Mid Atlantic Packaging) + $1,250.00 (TCC – The Cellular Connection) + $1,346.15 (Winner Ford Hyundai) + $680.00 ((TTEC) = $6,996.15

[35] The Court reaches the same high end average as O'Neal does.

[36] $720.00 (Sobieski Services) + $1,000.00 (CAP USA, Inc.) + $600.00 (LinCare, Inc.) + $560.00 (Mid Atlantic Packaging) + $865.38 (TCC – The Cellular Connection) + $769.23 (Winner Ford Hyundai) + $680 (TTEC) = $5,194.61.

[37] The Court does not accept Dr. Riley range of $687.79 to $880.93, with an average of $784.36 because those numbers were not limited to the seven positions available after July 1, 2021.

Because the Court cannot divine substantial evidence upon which the Board based its calculation of O'Neal's partial disability benefits, the Board's conclusion that he is entitled to partial disability benefits at the rate of $53.82 is **REVERSED.** The matter is **REMANDED** to the Board for it to either to support its calculations or enter an Order consistent with the Court's calculations.

## VI.    CONCLUSION

For the foregoing reasons, the Board's decision is **REVERSED and REMANDED** for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

9