**Karla PAGE, Employee Below, Appellant,**

v.

**HERCULES, INC., Employer Below, Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 8, 1993.
Decided: Feb. 23, 1994.

Eliot Alazraki and Gary S. Nitsche (argued), of Eliot Alazraki, P.A., Wilmington, for appellant.

Anthony M. Frabizzio of Heckler & Cattie, Wilmington, for appellee.

Before VEASEY, C.J., HORSEY, MOORE, HOLLAND, JJ., and ALLEN, Chancellor (constituting the Court en Banc).

MOORE, Justice.

Once again we address the issue of a claimant's right to recover workers' compensation under the "usual exertion rule" adopted in *Duvall v. Charles Connell Roofing*, Del.Supr., 564 A.2d 1132 (1989). There, we ruled that, irrespective of previous condition, an injury is compensable if the ordinary stress and strain of employment is a substantial cause of a claimant's injury. *Id.* at 1136. Karla Page ("Page") appeals a ruling of the Industrial Accident Board (the Board), affirmed by the Superior Court, denying her compensation from her former employer, Hercules, Inc. (Hercules), because she could not prove that on the day she became disabled she was doing the same work at Hercules which had led to her injuries. We consider those rulings erroneous. In cases where it is proven, as here, that the "ordinary stress and strain" of employment was a substantial cause of the employee's disability, there is no basis in law to superimpose the further requirement upon which both the Board and Superior Court relied. Accordingly, we reverse.

### I.

On November 22, 1989, Page, then a thirty-six year old lab technician employed by Hercules, filed a claim with the Board asserting that the "cumulative detrimental effect" of repeatedly lifting heavy cylinders, while employed at Hercules, caused her to develop chronic costochondritis. Simply put, costochondritis is an inflammation or an injury to the cartilage along the middle part of the chest, where the ribs meet the breast bone. Symptoms include tenderness along the entire chest cage, pain in the chest wall and pain when taking a breath. The Board concluded that Page did not prove that the stress of her employment at Hercules was a substantial cause of her medical condition. Page appealed the Board's decision to the Superior Court which reversed because the Board had misapplied the "cumulative detri-

mental effect" standard. *General Motors Corp. v. McNemar*, Del.Supr., 202 A.2d 803, 806 (1964). We refused Hercules' interlocutory appeal, and Page's claim was remanded to the Board.

On September 11, 1991, the Board denied Page disability benefits a second time, finding that she failed to meet her burden of proof under the second part of the *McNemar* two part test. *McNemar*, 202 A.2d at 806. Under that analysis, Page must prove to the Board that: (1) her usual duties and work habits contributed to the injury; and (2) the existence of such contributing factors upon the day Page alleges her right to compensation commenced, August 2, 1989. *Id.* According to the Board, Page did not prove the second element, because she was not doing the same job at Hercules which originally contributed to the injury. The Superior Court affirmed.

■ In 1982, Page was employed full-time for Hercules as a laboratory technician. She worked in various positions until August 2, 1988, when she left because she claimed her work caused her to become temporarily totally disabled. As a lab technician Page conducted tests to determine the physical properties of plastic and rubber compounds. This included experiments, known as temperature sweeps, which required her to use liquid nitrogen. The liquid nitrogen was stored in cylinders, which Page had to change periodically. The storage cylinders were' five feet high, 18–24 inches wide, and weighed several hundred pounds. She changed approximately one cylinder a day. In doing so she tilted the replacement cylinder, slipped a hand cart under it, and pulled the cylinder back against the hand cart in order to roll it to the proper place. Between 1982 and 1987, Page never reported any specific injury associated with moving the cylinders; although eventually she did complain to her supervisor of pain associated with moving them.

In 1987, Page transferred to light work duty because she suffered from chest pain due to her chronic costochondritis condition. Page argues that her condition resulted from the cumulative detrimental effect of repeatedly lifting the storage cylinders. While on light work duty, Page cut plastic samples

and inserted syringes into pressurized bottles. She complained to her supervisor that due to her medical condition she experienced difficulty cutting the samples and using fifty cc syringes. Page's supervisor instructed her to cease cutting samples and to use only smaller syringes. The supervisor also provided Page with filled syringes in order to ease her difficulty. On August 2, 1988, Page left Hercules due to her medical condition.

In ruling against claimant, the Board's decision states:

> The second part of the *McNemar* test requires the Board to determine whether the contributing factor was present on the day she alleges her right to compensation commenced. Claimant alleges that she has been totally disabled since August, 1988. She attributes her disability to moving cylinders. She stopped moving cylinders at the end of 1987. Claimant's last day of work, August 2, 1988, was spent putting syringes in bottles. Claimant did not attribute any injury to the syringe activity.

> The Board finds that claimant's condition does not result from her work activity.

The record, however, is inconsistent with the foregoing. Page specifically testified as follows:

Q. What did you use to cut the samples?

A. I used a cutting board, it was a cutting board.

MR. FORAKER (a member of the Board): You mean like a paper cutter?

THE WITNESS: Like a paper cutter, but the blade was much larger.

Q. What if any difficulties did you have doing that?

A. I had difficulties because my chest was bothering me and I was weak up in my upper body.

Q. Okay. Did you eventually stop doing that procedure?

A. Yes, I did.

\* \* \* \* \* \*

Q. What kind of effort is needed in order to put the syringe into these bottles?

A. I had to press with all my strength that I had left up top in my body in order to get the syringe inside the bottle.

Q. And why was that?

A. Because I was hurting in my chest.

Q. Okay. Did it have anything to do with the pressurization in the bottle?

A. Yes. The pressure in the bottle was pushing back as I was pushing in.

Furthermore, Dr. William A. Taylor also testified on behalf of Page:

Q. ... Just so I am clear, are you causally relating Ms. Page's condition to her work at Hercules?

A. I feel that the episode of costochondritis that I saw her for in December of '84 was directly related to activities at work, yes.

Q. Do you feel that—is there anything beyond that specific activity in 1984 that you are directly relating to activities at work?

A. The only other thing that I can state about that is that she came and saw me several times saying that she was still doing the repetitive motions at work. And I felt that flared up her chronic problem.

Q. I just want to make sure I'm clear. Are you saying that her costochondritis condition is caused by the December of '84 incident that she—

A. I think that was the instigating factor, yes.

Q. And what activities at work do you feel are responsible for this costochondritis condition?

A. Of course I wasn't at work with her, but anybody that does repetitive upper extremity work of a fair degree—and I'd have to see exactly what they were doing—can irritate or can cause a repetitive irritation of the costochondral area.

## II.

The construction of our workers' compensation law, 19 *Del.C.* sections 2301, *et seq.*, in relation to the *McNemar* decision is a question of law this Court reviews *de novo. Mer-*

*rill v. Crothall–American, Inc.*, Del.Supr., 606 A.2d 96 (1992); *see also Newmark v. Williams*, Del.Supr., 588 A.2d 1108, 1115 (1991) (citing *Fiduciary Trust Co. v. Fiduciary Trust Co.*, Del.Supr., 445 A.2d 927, 936 (1982)). Hence, we review the Superior Court's decision in order to determine whether that court erred in formulating or applying legal precepts. *Gilbert v. El Paso Co.*, Del.Supr., 575 A.2d 1131, 1142 (1990).

Page appeals the Superior Court's September 3, 1992 decision affirming the Board's finding that she failed to prove, pursuant to *McNemar*, that the factor contributing to her condition, moving the cylinders, existed on the day that her temporary permanent disability commenced.

Page also argues that the Superior Court's decision—that she failed to prove the presence of the work duty contributing to her condition on the date her disability commenced—is not supported by substantial evidence. Page asks us to reverse for four reasons: (1) because her usual duties and work habits were present on the date she alleges her right to compensation commenced, she has satisfied the second part of the *McNemar* test; (2) the trial court misconstrued the second part of the *McNemar* test by utilizing an arbitrary analysis; (3) the court below ignored overwhelming medical evidence that although Page's work duties had changed from moving cylinders to cutting plastic samples and injecting pressurized bottles on the date her disability commenced, the duties she was performing on August 2, 1988 substantially contributed to her condition and thus, satisfy the second part of *McNemar*; and (4) several Delaware court decisions have struck down impermissibly restrictive interpretations of the *McNemar* test.

Hercules urges us to affirm, but asserts that the Superior Court erroneously interpreted the first part of the *McNemar* test. Hercules argues that the work activities an employee alleges contributed to her disability must constitute the cause of the employee's condition, not merely contribute to her disability.

## III.

Under our workers' compensation law, the term "injury" is defined as follows:

'Injury' and 'personal' injury mean violence to the physical structure of the body, such disease or infection as naturally results directly therefrom when reasonably treated and compensable occupational diseases and compensable ionizing radiation injuries arising out of and in the course of employment. 19 *Del.C.* § 2301(12).

■ As we have previously stated, it is fundamental that the two primary purposes of the Delaware workers' compensation law are to assure prompt compensation of injured employees without regard to fault and to obviate the need for litigation. *Duvall*, 564 A.2d at 1133. Thus, 19 *Del.C.* § 2304 (1985) provides:

Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death *by accident* arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

■ Quite recently, we noted that "[t]he decisions of this Court have explained that the 'by accident' requirement focuses on an unintended cause or result, rather than a specific incident or unusual event. *Duvall*, 564 A.2d at 1134–36. As a result, 'an injury is compensable if the ordinary stress and strain of employment is a substantial cause of the injury.' *Id.* at 1136." *State v. Cephas*, Del.Supr., 637 A.2d 20, 23 (1994) (Veasey, C.J.). The existence of a specific physical accident, however, is not a prerequisite to recovery. *Duvall*, 564 A.2d at 1136; *Cephas*, 637 A.2d at 25.

In their rulings, both the Board and the Superior Court focused on the two-part test of *McNemar*, 202 A.2d at 806, that: (1) the usual duties and work habits of the claimant contributed to the injury, and (2) the claimant can show the "existence of such contributing factors upon the day in question".

■ Since the record demonstrates that the injury that Page sustained arose out of the ordinary stress and strain of her usual duties and work habits, and since that effect continues on the "day in question," there is no further requirement that she show an additional contributing factor, such as continuation of the activity that may have caused the condition initially. *Reese v. Home Budget Center*, Del.Supr., 619 A.2d 907 (1992). As we stated in *Reese*:

"We conclude that the term 'substantial cause' as applied in *Duvall* is limited to claims arising out of the ordinary stress and strain of employment. It has no application to causation relating to specific and identifiable industrial accidents." *Id.* at 911.

Thus, under *Culver v. Bennett*, Del.Supr., 588 A.2d 1094 (1991), we are satisfied that the record fully supports the conclusion that the ordinary stress and strain of Page's employment was the proximate cause of her injuries. *See Culver v. Bennett*, Del.Supr., 588 A.2d 1094, 1097 (1991).

Under the circumstances, it was erroneous for the Board and the Superior Court to continue applying the second part of the *McNemar* test to facts such as this case presents. The record fully supports a conclusion that Page's usual duties and work habits contributed to the injury. Clearly, they were a direct cause without which her injuries would not have occurred. *Culver*, 588 A.2d at 1097 (1991).

The judgment of the Superior Court is therefore REVERSED. The matter shall be REMANDED to the Superior Court with instructions that the Superior Court remand the matter to the Board for the entry of an appropriate award to Page.