# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DONALD SAVAGE,                         )
                                       )
    Claimant-Below/Appellant,          )
                                       )
    v.                                 )  C.A. No. N23A-06-008 KMV
                                       )
SHOPRITE,                              )
                                       )
    Employer-Below/Appellee.           )

Submitted: April 15, 2024
Decided: October 21, 2024

## MEMORANDUM OPINION

*Upon Appeal from the Decision of the Industrial Accident Board*: **AFFIRMED**.

Jennifer D. Donnelly, Esquire, KIMMEL, CARTER, ROMAN, PELTZ & O'NEILL, P.A., Newark, DE; *Counsel for Claimant-Below/Appellant*.

Nicholas E. Bittner, Esquire, HECKLER & FRABIZZIO, Wilmington, DE; *Counsel for Employer-Below/Appellee*.

**VAVALA, J.**

This is an appeal from the Industrial Accident Board's decision denying in part an injured employee's recovery under Delaware's workers' compensation statutes. The employee seeks payment from his employer for related medical expenses and temporary total disability benefits. The employee requests partial reversal of the Board's findings as to causation, arguing that such decision is bereft of substantial evidence. His employer counters that the Board gifted the employee more than he deserved based on the evidence before it.

This Court finds the Board's decision well-reasoned, thoughtful, supported by substantial evidence, and correct as a matter of law. As explained below, the Board's decision is **AFFIRMED**.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

This action was brought by claimant/appellant Donald Savage ("Claimant") against employer/appellee Shoprite ("Employer"). Claimant sought compensation for injuries suffered in connection with work-related activities. After a hearing, the Board issued a decision providing some but not all relief. Claimant disputes the Board's denial of the remaining relief.

---

[1] The facts in this decision reflect the Industrial Accident Board's findings based on the record developed at the April 17, 2023, hearing ("Hearing"). *See* Docket Item ("D.I.") 11, Ex. A ("Decision"). Citations to the Hearing transcript are in the form "Tr. #." The lodged depositions are cited as Last Name Dep.

2

## A. The Slip & Fall

Claimant worked as a seafood manager for Employer at its Christina Crossing location when he was involved in a work-related accident on October 17, 2021.[2] Chatting with a coworker, Claimant grabbed some papers off the lobster tank and proceeded towards the oil deep fryer, when suddenly his feet flew out from under him.[3] The papers scattered as Claimant grasped for anything to brace his fall.[4] He caught nothing.

Claimant dropped to the floor with such force, it was "as if he got hit on the blindside while playing football."[5] A warm sensation coursed through his body as he lay there stunned.[6] Still disoriented, he struggled to walk it off.[7] He waited at the front of the store for the assistant store manager at the time, David Pierson, to arrive.[8] Claimant informed Mr. Pierson that he fell and "d[id]n't feel right."[9] Then they went upstairs to fill out an accident report.[10] After discussing the incident, they decided

---

[2] Decision at 2.

[3] *Id.*

[4] *Id.*

[5] *Id.* at 3.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] Tr. 39:12–18.

[10] Tr. 39:21–25.

that Claimant should get medical attention, so Mr. Pierson drove him to the emergency room at ChristianaCare in Wilmington.[11]

## B.    The Medical Visits

Medical records from ChristianaCare indicate on the day of the accident Claimant complained of right-hand pain, low back pain, and bilateral rib pain, but denied any head-related injuries.[12]  A physical examination of Claimant noted mild tenderness and swelling of his upper extremities and parts of his hand, but otherwise a full range of motion of his neck.[13]  X-rays failed to show any acute findings more than soft tissue injuries.[14]

The following day, Employer directed Claimant to visit WorkPro at Pivot Occupational Health to get treated for tightness in his low back.[15]  The day after the WorkPro visit, on October 19, 2021, Dr. Damon D. Cary treated Claimant, who complained of headaches and rated his pain as "nine out of ten that was throbbing, steady and chronic."[16]  Dr. Cary diagnosed Claimant with a headache, lumbar strain, bilateral wrist and hand sprains, and a contusion.[17]

---

[11] Decision at 3; Tr. 40:10–12.

[12] Decision at 15.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 3.

[16] *Id.* at 15.

[17] *Id.* at 8.

Claimant then visited with Dr. Polaski (a chiropractor in Dr. Cary's office) and received iontophoresis (electrical stimulation) for his low back.[18] Claimant stated he was dropping things at work because his right hand was still weakened and the medications were not working well.[19]

The following month, on November 11, 2021, Dr. Steven Grossinger performed an electromyography ("EMG") to test Claimant's muscles and nerves in his low back and legs.[20] The EMG was positive for an acute left L5 radiculopathy.[21] Claimant again visited with Dr. Cary and complained of ongoing pain in his low back, right wrist, and head.[22] He was diagnosed with a restricted range of motion in his lumbar spine and right wrist and advised to undergo further imaging.[23]

On November 19, 2021, MRIs were taken of Claimant's lumbar spine and right hand.[24] The MRI of his lumbar spine reflects a slight herniation and disc bulge,

---

[18] *Id.*

[19] *Id.*

[20] *Id.* at 8, 15–16.

[21] Decision at 8. *But see Id.* at 16 (inconsistent tests show no pinched nerves); *id.* at 14 ("Dr. Cary admitted he did not review the medical records from Claimant's visit with Dr. Grossinger, but he did have the EMG report. Dr. Cary also did not review the medical records from Claimant's visit with Dr. Balu.").

[22] Decision at 8 ("The headaches improved somewhat.").

[23] *Id.* at 9.

[24] *Id.* at 16.

but there was no evidence of pinched nerves.[25] The MRI of his right hand reflected osteoarthritis.[26]

At a December 14, 2021 visit with Dr. Cary, Claimant presented with severe pain in his low back and right hand.[27] He complained of short-term memory loss and comments from his wife and coworkers that he "was not as sharp as he used to be."[28] Dr. Cary diagnosed Claimant with post-concussion syndrome and referred him to Dr. Evan Crain at Mid-Atlantic for evaluation and treatment for a potential concussion.[29]

On December 23, 2021, Dr. Crain reviewed the MRIs and conducted x-rays, stating that they demonstrated an old, healed fracture in Claimant's right hand.[30]

---

[25] *Id.* at 9 (reflecting diagnoses of: "L4-5 disk herniation and L5-S1 disk bulge[;] first digit flexor tendinosis with peritendinitis; moderate/severe first metacarpophalangeal joint arthrosis; first metacarpophalangeal capsular thickening/sprain; and non-specific small cyst."), 16.

[26] *Id.* at 16, 20 ("Although the MRI of the lumbar spine demonstrated a two-millimeter L4–5 disk herniation, the disk herniation did not compromise the central canal or the neural foramen. The findings relative to the longitudinal ligament would not explain radiculopathy because it does not relate to any compromise of the central canal or the neural foramen.").

[27] *Id.* at 9.

[28] *Id. But see* Tr. 41:5–15 (Mr. Pierson had known Claimant for 15 years, and "[w]ith the interactions [Mr. Pierson has had] with Claimant, [Mr. Pierson] would not be able to say that [he has] noticed something considerably different about the way Claimant behaves or acts.").

[29] Decision at 9.

[30] *Id.* at 10 ("X-rays from Dr. Crain's office demonstrated an abnormality of the ring metacarpal that was an old fracture. There was no evidence of an acute fracture. Dr. Crain was concerned Claimant sustained a severe contusion to the hand."), 16.

Claimant presented with hand pain and symptoms of carpal tunnel, so Dr. Crain referred him to a hand therapist at Rise Physical Therapy ("Rise PT") and instructed Claimant to sleep with a wrist splint.[31] Claimant continued to rehab at Dr. Cary's office through December 2021.[32]

In January 2022, Claimant complained of headaches, blurry and sensitive vision, and pain in his back and hand.[33] Dr. Cary, believing Claimant had symptoms of a concussion, referred him to Mid-Atlantic for vestibular therapy.[34] At that time, Claimant was seeing three providers: Dr. Cary for his low back; Dr. Crain for his right hand/wrist; and Mid-Atlantic for his head. At a January 25, 2022 visit, Claimant reported persistent pain in his palm that worsened with pressure, so Dr. Cary advised him to get another MRI.[35] After reviewing the second MRI result, Dr. Cary diagnosed Claimant with a tendon tear in his wrist.[36]

---

[31] *Id.* at 16.

[32] Decision at 10.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 10–11.

[36] *Id.* at 11 ("The impression was of degenerative change of the distal radial ulnar joint with marrow edema and a cystic change within the dorsal aspect of the distal radius. Findings included: tendinopathy; mild intrasubstance tearing of the extensor carpi ulnaris tendon; soft tissue swelling/synovitis at the dorsal/ulna aspect of the wrist; and a slight dorsal displacement of the distal ulna relative to the distal radius.").

Medical records from a January 27, 2022 Mid-Atlantic visit relate complaints of headache, insomnia, dizziness, light and noise sensitivity, and fatigue.[37] Claimant continued to receive treatment for several months thereafter.[38] He received two cortisone injections from Dr. Crain to relieve his wrist pain, but rejected an offer from Dr. Balu for an injection in his back.[39] In March 2022, "Dr. Cary discontinued the in-office rehabilitation and chiropractic treatment because Dr. Cary believed Claimant had plateaued."[40]

Dr. Cary wanted Claimant to start a work-hardening regimen to identify the types of jobs that he could handle so that he could return to work.[41] But Claimant "was unable to start work hardening due to lack of insurance coverage."[42] Thus, he was limited to "light duty work restrictions with no repetitive use of the right upper extremity."[43]

---

[37] Decision at 11, 17.

[38] *Id.* at 17–18.

[39] *Id.* at 11 ("Dr. Balu discussed with Claimant different topical creams that Claimant reported did not help.").

[40] *Id.*

[41] Decision at 12 (Dr. Cary wanted Claimant to undergo work-hardening because it is more aggressive than traditional physical therapy.").

[42] *Id.*

[43] *Id.*

On March 20, 2022, while inside a walk-in freezer at work, Claimant "tweaked his neck and back" to avoid a 40-pound box that was falling.[44] Claimant reported the incident to WorkPro and Dr. Cary added a diagnosis of acute lumbar spine flare-up.[45] Dr. Cary then prescribed Tramadol for pain and kept Claimant on light duty status until April 13, 2022.[46]

When Claimant returned to full-duty status, he was examined by Dr. William Sommers who noted that Claimant "was uncooperative in providing any history or details relating to past medical history[.]"[47] In May 2022, Claimant admitted that he was benefitting from the chiropractic treatment but raised several other concerns.[48] He presented with swelling in his right hand, "ongoing weakness in his left leg three to four time per week[,]" and back pain exacerbated by bending, reaching, and sitting.[49] "The last time Dr. Cary saw Claimant was in June 2022 despite Claimant's ongoing complaints."[50]

---

[44] *Id.*

[45] *Id.*

[46] *Id.* ("On April 13, 2022, Dr. Cary released Claimant to full duty work.").

[47] Decision at 18.

[48] *Id.* at 12.

[49] *Id.*

[50] *Id.* at 13.

9

## C.     The Hearing

On July 29, 2022, Claimant petitioned the Board for a compensation determination against Employer.[51]  He sought findings that: (1) he had suffered compensable injuries to his back, neck, right hand/wrist, and his head; (2) his medical treatment for those injuries was reasonable, necessary, and causally related to the work accident; and (3) he was entitled to payment of temporary total disability benefits from March 22, 2022 through May 1, 2022.[52]  Employer contested the nature and extent of Claimant's injuries and disputed whether the medical treatment was reasonable, necessary, and causally related to the work accident.

At the April 17, 2023 Hearing, Claimant and David Pierson testified on behalf of Claimant.  Whether Claimant's injuries were causally related to the work accident was addressed by competing experts.[53]  Dr. Cary testified via deposition on behalf of Claimant and Dr. Sommers provided live, and the only, testimony for Employer.

---

[51] Tr. 3:7–8.

[52] Decision at 2 (the payment request for March to May is for "the time Employer was unable to accommodate [Claimant's] light duty work restrictions").

[53] D.I. 12 at 1.

### D. The Decision

On May 24, 2023, the Board issued its Decision.[54]  It was undisputed that Claimant injured his low back and right hand/wrist from a work-related accident.[55]  But the Board concluded that Claimant had "stopped all medical treatment in June 2022 and was working without restrictions," which suggested that his injuries had resolved.[56]  The main dispute before the Board was the extent of such injuries and whether Claimant sustained neck or head injuries to endorse a concussion.[57]

The Board expressed concerns about Dr. Cary's medical oversight of Claimant because his license to practice medicine was on a probationary status.[58]  Dr. Cary recommended a work-hardening program to slowly integrate Claimant back to work, but the Board found Claimant need not enter a work-hardening program if he was already capable of returning to work without any restrictions.[59]  The Board also noted that Dr. Cary had failed to comply with prescription requirements—that is, no documents established standard medical checks or any

---

[54] D.I. 11 at 1.

[55] Decision at 24; *see also id.* at 19 ("Dr. Sommers concluded [Appelant]'s injuries were limited to sprains and strains of the low back and of the right hand/wrist that would have resolved in weeks to three months.").

[56] Decision at 19.

[57] *Id.* at 24.

[58] Cary Dep. 6:6–8.

[59] Decision at 30.

discussions with Claimant regarding the risks and benefits of the medications before Dr. Cary prescribed them.[60]

The Board denied the claim for a neck injury. Although the timing of when Claimant first presented with neck issues is murky, Claimant denied having any neck pain at the emergency room within a few hours of the accident and Dr. Cary failed to document any neck-related injuries in late 2021 through early 2022.[61] The record is devoid of any support showing Claimant's neck injuries were causally related to the accident.

The Board credited Dr. Sommers' testimony and guidance regarding the reasonableness and necessity of Claimant's medications.[62] So the non-steroidal medications prescribed between November 11, 2021 and January 17, 2022 were

---

[60] *Id.* at 30–31 (Dr. Cary played fast and loose with the prescription requirements because it "would be too burdensome"). *See also id.* at 31 ("Dr. Cary had been a longtime medical provider to Delaware workers' compensation patients prior to his medical license being suspended. He is fully aware of the responsibilities for treating Delaware workers' compensation patients. One of the reasons Dr. Cary's medical license was suspended was because he was not compliant with his obligations when prescribing medications. It is alarming that after having his license relatively recently reinstated, Dr. Cary is demonstrating the same type of cavalier and unprofessional recordkeeping and medical oversight he exhibited leading up to his suspended license. Furthermore, Dr. Cary's conduct causes him not to be credible and hurts Claimant's case.").

[61] Decision at 25.

[62] *Id.* at 29.

reasonable and necessary.[63]  But not the opioids.  Yet, because Dr. Cary prescribed

opioids *after* January 2022, the issue was moot.[64]

The Board found Claimant's "subjective complaints of pain down the leg with

numbness and tingling could not be reconciled with the MRI findings or with Dr.

Sommer's examination findings."[65]  Instead, the Board credited Dr. Sommer's

testimony, which challenged the lack of evidence to support a neck injury:

> There was no advanced imaging of the cervical spine or physical
> therapy directed to the neck. There were no neck complaints early in
> treatment. When Claimant treated [sic] at the emergency room shortly
> after the work accident, Claimant had full range of motion of the neck
> and no tenderness. There was nothing on Dr. Sommers' physical
> examination to suggest any significant neck injury. Dr. Sommers
> remarked if Claimant suffered any injury to the neck, it would have
> been a minor cervical strain and sprain type injury that would have
> resolved in the same general timeframe.[66]

Claimant also sought temporary total disability benefits from March 22 to May 16,

2022, during which Employer refused to cover Claimant's light duty restrictions.[67]

Because Claimant's low back and right hand/wrist injuries resolved by February

2022 the Board found the disputed period moot.[68]

---

[63] *Id.* at 29–30.

[64] *Id.* at 30.

[65] *Id.* at 20.

[66] *Id.* at 21.

[67] Decision at 30.

[68] *Id.*

Under 19 *Del. C.* § 2322(e), the Board awarded medical expert fees in favor of Claimant because his petition for compensation was granted in part.[69] Employer had tendered an award, but the value of the Board's award was higher than the settlement offer.[70] The Board explained that a "claimant who is awarded compensation generally is entitled to payment of 'a reasonable attorney[s'] fee in an amount not to exceed thirty percent of the award or ten times the average weekly wage in Delaware as announced by the Secretary of Labor at the time of the award, whichever is smaller[.]"[71] Thus, the Board awarded Claimant $6,000 in reasonable attorneys' fees to be paid by Employer.[72]

Ultimately, the Board found the testimony of Dr. Sommers more credible than Dr. Cary's.[73] With the weight of the evidence in Employer's favor, the record established that Claimant's injuries were "limited to low back and right hand/wrist sprains and strains that have since resolved."[74] In short, the Board granted in part

---

[69] *Id.* at 31 ("Under 19 *Del. C.* § 2322(e), [Employer] shall pay for Claimant's medical expert fees in the event Claimant receives an award.").

[70] *Id.* ("Attorney[s'] fees are not awarded, however, if, thirty days prior to the hearing date, the employer gives a written settlement offer to the claimant that is 'equal to or greater than the amount ultimately awarded by the Board.'") (citing 19 *Del. C.* § 2320(10)(a)).

[71] Decision at 30.

[72] *Id.*

[73] *Id.* at 24–25 ("The Board accepts the opinions of Dr. Sommers over the opinion of Dr. Cary. Dr. Sommers' testimony was credible. Dr. Cary's testimony was not.").

[74] *Id.* at 24.

and denied in part Claimant's claims.[75]  Claimant timely appealed the partial denial on June 19, 2023, and briefing was completed on April 15, 2024.[76]

## DISCUSSION

The questions pending before this Court on appeal are whether the Board's fact findings are supported by substantial evidence and its conclusions are free of legal error.  Claimant argues that the Board erred by improperly denying him compensation for treatment of his low back, right hand/wrist, and head due to the work accident.  This Court disagrees.  While the Claimant may be dissatisfied with the result, this Court finds the Board's findings of fact are properly supported by the record and its legal conclusions are correct as a matter of Delaware law.

This Court exercises "appellate jurisdiction over final agency decisions under 29 *Del. C.* § 10142."[77]  "The review of an Industrial Accident Board's decision is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[78]  This Court "must give deference to the 'experience and

---

[75] *Id.*

[76] *Id.* at 32.

[77] *Quality Assured Inc. v. David*, 2022 WL 17442738 (Del. Super. Dec. 6, 2022).

[78] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (citing *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016)); *see also Gen. Motors Corp. v. Freeman*, 164 A.2d 686, 689 (Del. 1960); *Rosenblum v. City of Wilm.*, 2024 WL 3876630, at *1 (Del. Super. Aug. 20, 2024); *Johnson v. Canalfront Builders, LLC*, 2024 WL 862442, at *3 (Del. Super. Feb. 29, 2024), *aff'd*, 2024 WL 3886193 (Del. Aug. 21, 2024).

specialized competence of the Board' and must take into account the purposes of the Worker's Compensation Act. These restrictions are in part due to the 'critical advantage' the Board has in its ability to observe the testimony of the live witnesses."[79] "Questions of law, such as the construction of the workers' compensation statute, are reviewed *de novo*."[80] If the law is "overridden or misapplied," this Court "will not hesitate to reverse."[81] Questions of fact, however, are governed by the substantial evidence standard. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[82] Put differently, substantial evidence is "more than a scintilla but less than a preponderance of the evidence."[83] In this context, it is not this Court's

---

[79] *Foraker v. Amazon.com, Inc.*, 2022 WL 599047, at *3 (Del. Super. Feb. 9, 2022) (first quoting *Phoenix Steel Corp. v. Garton*, 1980 WL 687396, at *2 (Del. Super. July 25, 1980); then citing *Histed v. E.I. Du Pont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993); and then quoting *Butler v. Speakman Co.*, 1992 WL 276449, at *2 (Del. 1992)).

[80] *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 932 (Del. 2007) (citing *Page v. Hercules*, 637 A.2d 29, 32 (Del. 1994)).

[81] *Baxter v. Verizon Commn's*, 2024 WL 3581660, at *3 (Del. Super. July 30, 2024) (first citing *Pitts v. White*, 109 A.2d 786, 788 (Del. 1954); then citing *Ohrt v. Kentmere Home*, 1996 WL 527213, at *3 (Del. Super. Aug. 9, 1996); and then citing *City of Wilm. V. Clark*, 1991 WL 53441, at *3 (Del. Super. Mar. 20, 1991)).

[82] *Fowler v. Perdue, Inc.*, 2024 WL 3196775, at *8 (Del. June 24, 2024) (citing *Zayas v. State*, 273 A.3d 776, 785 (Del. 2022)) (cleaned up).

[83] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (quoting *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013)); *id.* at 871 (citing *Hardy v. E. Quality Vending*, 2015 WL 2378903, at *6 (Del. Super. May 12, 2015)) ("[T]his factual finding depends in large measure on the Board's assessment of the credibility of the witnesses who testify before it. It is the exclusive function of the Board to evaluate the credibility of witnesses.").

province to independently weigh the evidence, determine questions of credibility, or make its own factual findings,[84] but rather, to "view the record in the light most favorable to the prevailing party below."[85] Further, "[t]here is a presumption in favor of validity of the Board's decision and the burden of showing the error rests with the party raising the objection to such decision."[86] Here, that is Claimant.

"Under the Delaware Workers' Compensation Act, an employee is entitled to receive compensation for injuries sustained in accidents 'arising out of and in the course of employment.'"[87] "Generally, the quantum of proof in a workers' compensation case is a preponderance of the evidence."[88] "When an employee has suffered an injury *causally related* to a work accident, he or she is entitled to payment of expenses incurred for 'reasonable and necessary' medical services directly related to that injury.'"[89]

---

[84] *Kelley v. Perdue Farms*, 123 A.3d 150, 153 (Del. Super. 2015) (citing *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995)).

[85] *Wyatt v. Rescare Home Care*, 81 A.3d 1253, 1258–59 (Del. 2013) (citing *Steppi v. Conti Elec., Inc.*, 991 A.2d 19 (Del. 2010) (TABLE)).

[86] *Foraker*, 2022 WL 599047, at *3 n.40 (citing *Phoenix Steel Corp. v. Garton*, 1980 WL 687396, at *2 (Del. Super. July 25, 1980)).

[87] *Quality Assured*, 2022 WL 17442738, at *3 (citing 19 *Del. C.* § 2304).

[88] *Falconi v. Coombs & Coombs, Inc.*, 902 A.2d 1094, 1097 (citing *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 343 (Del. 1993)).

[89] 2022 WL 17442738, at *3 (citing 19 *Del. C.* § 2322) (emphasis added).

Claimant argues that the Board's factual findings are not supported by substantial evidence and its conclusion of law regarding causation was in error. Claimant does not dispute the body of case law Employer pointed to in its answering brief regarding the substantial evidence standard or the Board's ability to rely on expert testimony, but instead focuses on two cases in support of his argument for causation. Neither case compels this Court to conclude the Board erred as a matter of law in finding Claimant failed to establish causation.

The first is *Quality Assured Incorporated v. David*, in which this Court explained that a claimant need not "proffer conclusive evidence, as long as he proves causation by a preponderance of the evidence."[90] In *Quality Assured*, the employer took issue with the opposing expert's testimony because it missed certain medical terms and that effective injections alone were insufficient to prove reasonableness.[91] But this Court explained that "unlike the [Board], the Court does not sit as a trier-of-fact and is prohibited from making its own factual findings."[92] And despite the employer disagreeing with the Board's "credibility finding and weighing of evidence[,] . . . the Court must defer to the 'experience and special competence' of the [Board] in those aspects of its ruling."[93]

---

[90] *Id.* at *6.

[91] *Id.*

[92] *Id.*

[93] *Id.*

18

The second case Claimant relies upon is *Reese v. Home Budget Center*, a 1992 case in which the Delaware Supreme Court used the "but for" definition of proximate cause to fix "the relationship between an acknowledged industrial accident and its aftermath."[94] The *Reese* Court reasoned that the "accident need not be the sole cause or even a substantial cause of the injury. If the accident provides the 'setting' or 'trigger,' causation is satisfied for purposes of compensability."[95]

More recently, however, in *Hoffecker v. Lexus of Wilmington*, the Delaware Supreme Court affirmed the Board's and this Court's findings where the claimant failed to "meet his burden in showing *any causal relationship* between his work and his back injury."[96] The *Hoffecker* Court even quoted Dr. Grossinger's testimony wherein he opined that "'to link a condition to accumulative work activities,' he believed 'there should be some notation by the treating doctors suggesting that the work itself that the patient is mentioning the work and the doctor is recognizing and connecting the work as being causal.'"[97]

Here, the Board concluded that Claimant did not meet his initial burden to show causation by a preponderance of the evidence. "Identifying a symptom does

---

[94] 619 A.2d 907, 910 (Del. 1992).

[95] *Id.*

[96] 36 A.3d 349 (Del. 2012) (TABLE) (emphasis added).

[97] *Id.* (cleaned up).

19

not constitute proving an injury."[98]  Nor does "[a]n expert medical opinion based on the interpretation of appropriate objective test results . . . lack a substantial factual basis."[99]  Instead, "[t]he Board [was] free to accept the testimony of one medical expert over that of another"[100] and did so by crediting Dr. Sommer's medical opinion over Dr. Cary's.  "[The E]mployer is under no obligation to identify or prove the existence of a non-work cause of injury; the employer simply needs to present evidence rebutting the claim that an injury was work related."[101] Whereas, here, the Board found credible facts rebutting Claimant's argument that all his injuries were causally related to his work accident.  This Court declines to second-guess the Board.  Instead, this Court holds the facts found by the Board are supported by substantial evidence and its legal conclusion regarding causation was not in error.

A.    **The Board's finding that Claimant's low back injury was limited to a sprain/strain and resolved by January 2022 is supported by substantial evidence.**

---

[98] *McDaniel-Wesche v. Sun Behav. Health*, 2024 WL 980483, at *5 (Del. Super. Mar. 6, 2024)).

[99] *Blake v. State*, 792 A.2d 188 (Del. 2002) (TABLE).

[100] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *3 (Del. Super. May 5, 1995) (citation omitted); *see also Miller v. Del. Psych. Ctr.*, 2013 WL 1281850, at *9 (Del. Super. Mar. 28, 2013) ("The Board may accept one medical expert's testimony as more persuasive than that of another. . . . As long as the Board's determination is supported by substantial evidence, the Court will not 'second-guess such credibility determinations.'").

[101] *Dye v. Merrit-Sparks*, 2009 WL 3334908, at *2 (Del. Super. Aug. 31, 2009) (citing *Strawbridge & Clothier v. Campbell*, 492 A.2d 853, 854 (Del. 1985)).

20

As the fact finder, the Board was at liberty to credit certain expert testimony and reject other expert testimony regarding the issue of causation. *Wesley v. State* is instructive.[102] There, the claimant sought compensation for a low-back injury and related medical treatments causally related to a work incident. Not only are the facts of *Wesley* like this case, but so are some of the major players. For example, in *Wesley*, Dr. Grossinger treated the claimant and Dr. Sommers testified on behalf of the employer.[103] Although Dr. Grossinger was the claimant's treating physician, the Board credited the testimony of Dr. Sommers who found no objective (or corroborating) evidence suggesting lumbosacral radiculopathy. The Board in *Wesley* determined that the claimant failed to show that she suffered a lumbar sprain/strain injury in relation to the work accident. So too here.

At the emergency room on the day of the Accident, Claimant presented with "tenderness to palpitation of the lumbar spine and of the left paraspinal muscles" and his low back was diagnosed as "limited to a lumbar contusion."[104] Dr. Sommers explained there was "no credible evidence to support disk involvement or lumbosacral radiculopathy."[105] And the EMGs performed by Drs. Grossinger and

---

[102] 2021 WL 3783634, at *2 (Del. Super. Aug. 23, 2021).

[103] *Id.* at *2–3.

[104] Decision at 28.

[105] *Id.*

21

Sarlo were irreconcilable—only Dr. Sarlo's EMG was consistent with the MRI.[106] Likewise, Claimant's own expert, Dr. Cary, failed to opine that any imaging "demonstrated any compromise of the central canal or of the neural foramen."[107]

Dr. Cary documented that Claimant had ongoing muscle spasms despite having full lumbar range of motion.[108] Yet Dr. Sommers noted "that it would be unusual for someone to have significant muscle spasm[s] and not have associated restricted range of motion."[109] Moreover, corresponding medical records show that Claimant had received opioids for spontaneous bursts of pain and reported full lumbar range of motion despite ongoing spasms.[110]

Other than "possible mild weakness of the right hand intrinsic muscles[,]" Dr. Sommers' findings were unremarkable—Claimant had full lumbar range of motion and no evidence suggested "segmental weakness or reflex attenuation consistent with lumbosacral radiculopathy."[111] "On structural examination, there was full pain-

---

[106] *Id.*

[107] *Id.*

[108] *Id.* at 10, 16.

[109] Decision at 16–17 (at that time, Claimant was prescribed Tylenol #3).

[110] *Id.* at 17–18.

[111] *Id.* at 19. Such results were "consistent with the normal result of Dr. Sarlo's EMG of the lower extremities performed on April 7, 2022, per [Employer]'s direction[,]" which was also consistent with Dr. Grossinger's November 11, 2021 EMG results. *Id.*

free lumbar range of motion. Claimant was able to bend at the waist and advance his fingertips to within two inches of his toes without bending his knees."[112]

True, Claimant's visits with Dr. Cary "were reasonable and necessary because Dr. Cary was the doctor overseeing treatment[;]"[113] yet the Board properly relied on Dr. Sommers' opinion and supporting evidence that Claimant's low back injury *had resolved*, finding Claimant's low back injury was limited to a strain and sprain.[114] And it did so generously by giving Claimant the benefit of the doubt because his low back injuries could have resolved within a few weeks instead of a few months.[115]

### B. The Board's finding that Claimant's right hand/wrist was limited to a sprain/strain and resolved by February 2022 is supported by substantial evidence.

The Board limited the work-related diagnosis to a right hand/wrist sprain and strain, ruling out the compensability of carpal tunnel syndrome.[116] Dr. Sommers attributed Dr. Crain's medical reports to Claimant's preexisting condition unrelated to the Accident.[117] But he did not "dispute the reasonableness and necessity of Dr.

---

[112] *Id.*

[113] *Id.* at 29. The Board did not, however, compensate Claimant for services provided by Dr. Cary on October 19, 2021 because Dr. Cary was not certified to practice until November 11, 2021. *Id.*

[114] Decision at 27–28.

[115] *Id.* at 29.

[116] *Id.* at 27.

[117] *Id.*

Crain's treatment."[118]  Thus, the Board properly found the treatment by Dr. Crain and Rise PT through February 2022 was reasonable, necessary, and causally related to the Accident.[119]

### C.  The Board's finding that Claimant did not sustain a head injury/concussion is supported by substantial evidence.

The Claimant had the opportunity to disclose a head injury when he was treated in the emergency room shortly after the Accident, yet he denied any headaches and loss of consciousness.[120]  Rather, Claimant admitted he landed on his hands and rear.[121]  And medical records indicate that Claimant had a full and clear recollection of the Accident.[122]  Significantly, the Board deemed Claimant displayed credibility issues.[123]  His testimony regarding whether he hit his head was inconsistent, and some "of the Mid-Atlantic test results did not correlate with Claimant's level of function suggesting Claimant's complaints could be exaggerated."[124]

---

[118] *Id.*

[119] *Id.*

[120] Decision at 25–26. *Compare* Decision at 3 (Claimant testified that, when he woke up the morning after the Accident, "the room was spinning fast."), *with* Decision at 5 (the WorkPro medical records "made no mention of a head injury . . . headaches . . . or loss of consciousness.").

[121] Decision at 25.

[122] *Id.*

[123] *Id.* at 28.

[124] *Id.* at 28–29.

When asked by Dr. Sommers about the Accident, Claimant denied striking his head or losing consciousness, denied ever taking any medications, and directed Dr. Sommers to read the medical records.[125] Dr. Sommers advised that the medical record failed to support that Claimant sustained a head injury or concussion:

> On the day of the work accident, when Claimant treated [sic] at the emergency room, Claimant specifically denied a head injury, denied loss of consciousness, and denied headaches. According to the emergency room records, Claimant had a full and clear recollection of the accident. The examination of the head and neck were unremarkable. The next day at WorkPro, there was no mention of a head injury, of headaches, or of loss of consciousness. Claimant denied neurological symptoms including headaches and dizziness.[126]

Indeed, Claimant did not present with headaches until his October 19, 2021 visit with Dr. Cary, which militates against a causal connection between such headaches and the Accident.[127] WorkPro medical records reflect tightness in the low back but are absent any headaches, dizziness, numbness, or tingling.[128] Nor do such records indicate any pain related to Claimant's back, wrist, neck, or joints.[129] The low scores

---

[125] Decision at 18. *But see id.* at 18 ("Claimant denied taking medications although Dr. Sommers was aware Dr. Cary prescribed Tramadol on March 20, 2022"); *id.* at 22 ("Dr. Sommers recognized that Dr. Cary did not provide the necessary documentation to support such prescriptions").

[126] Decision at 21; *see also id.* at 20 ("Claimant did not injure his neck or his head [and] did not sustain a concussion.").

[127] Decision at 22.

[128] *Id.* at 15.

[129] *Id.*

from the Mid-Atlantic tests were inconsistent with the initial imaging, and more indicative of someone suffering from severe dementia or cognitive impairment.[130]

Claimant first presented with headaches at his first visit with Dr. Cary, who failed to explain how Claimant's purported head injury was linked to the Accident.[131] Dr. Grossinger documented the first report of a head injury—a month after the Accident.[132] No witnesses or video evidence supports Claimant's claim that he hit his head.[133] Claimant leans on the concussion scores from Mid-Atlantic, but Claimant's work record contradicts such cognitive impairment.[134]

As a seafood manager, Claimant's duties include stocking product, serving customers, supervising staff, coordinating work schedules, and handling employee concerns.[135] Mr. Pierson testified that he had not "noticed any difference in what

---

[130] *Id.* at 17–18.

[131] Decision at 26.

[132] *Id.*

[133] *Id.*

[134] *Id.* (Claimant had continued to work in a managerial capacity. He was and has been supervising staff, coordinating staff work schedules and dealing with employee concerns."); *see also id.* at 22 ("[T]he scores did not support Claimant's level of function. The scores reflected a person having severe dementia and severe cognitive impairment, yet Claimant had been working consistently since the work accident and had been on full duty for almost the last year . . . the tests did not incorporate internal validation measures").

[135] Decision at 6; Tr. 41:17–42:6. Claimant works 55 to 60 hours per week. Tr. 7:23–25, 42:7–14 ("Claimant has always been someone who we knew would be there from dusk 'til dawn if needed. He is very dedicated to what he does, so I -- without having the time sheets, I would still assume that he did his overtime.").

Claimant does" at work.[136]  Although Dr. Cary attributed Claimant's headaches to the work accident, he failed to explain the connection and did not place any work restrictions on Claimant.[137]  It follows that the Board found no evidence showing Claimant was unable to cognitively perform his job.[138]

In sum, the etiology of Claimant's conditions remains elusive.  The Board correctly determined that Claimant failed to meet his burden to show his symptoms were causally related to the October 17, 2021 work-related injury.  The Board properly rejected Dr. Cary's opinion that some of the symptoms were related to the work accident or as severe as suggested.  Dr. Sommers' testimony moves the needle more—and the Board properly credited his testimony.

---

[136] Tr. 42:15–22.

[137] Decision at 16.

[138] *Id.* at 26.

**CONCLUSION**

This Court finds the Board's factual findings regarding the type and extent of Claimant's injuries are based upon substantial evidence in the record and its conclusions of law regarding causation are consistent with Delaware jurisprudence. Accordingly, the Board's Decision denying in part Claimant's compensation for medical expenses is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Kathleen M. Vavala*
The Honorable Kathleen M. Vavala